[Civ. No. 1261. Third Appellate District.—November 5, 1914.]

KLAMATH LUMBER COMPANY (a Corporation), Respondent, v. CO-OPERATIVE LAND & TRUST COMPANY (a Corporation), Appellant.

SALE OF POTATO CRATES—DELIVERY TO THIRD PARTY—LIABILITY OF DEFENDANT—SUFFICIENCY OF EVIDENCE.—In this action to recover the purchase price of certain sweet potato crates alleged to have been sold to defendant, but which were delivered to one of the defendant's customers, who was present at the time the goods were ordered, it is held that the evidence is sufficient to support the finding of the trial court that the crates were sold to defendant, that it promised to pay for them, and upon such promise plaintiff relied in delivering the property.

ID.—EVIDENCE—ABSENCE OF WITNESS—ADMISSIBILITY OF EXPLANATION. In such a case it was proper to show on the trial that the party to whom the crates were delivered was in Oregon in explanation of the fact that he was not called as a witness.

ID.—ERROR WITHOUT PREJUDICE—CONCLUSION OF WITNESS.—In such a case, where a witness was asked "and as president of the corporation, as the manager of the plaintiff in this action, Mr. Routt, did you have any agreement with the defendant in this action in the year 1909?" while technically speaking, the question was probably objectionable, the answer was entirely without prejudice, where from the facts testified to by the witness, the conclusion necessarily followed that the agreement was with the defendant, and said testimony made it obvious that such was the opinion of the witness.

ID.—INSTRUCTIONS—STATEMENT OF NOTICE OF CASE—SALE AND DELIVERY.—An instruction given in such a case at the request of plaintiff

that, "plaintiff brings this action to obtain a judgment against defendant for the sum of $600.00 alleged to be due plaintiff from defendant for the sale of 4,000 sweet potato crates for which plaintiff alleges defendant promised to pay; that defendant promised to pay it at the rate of fifteen cents per crate, no part of which sum plaintiff alleges has ever been paid," is not objectionable as it is proper for the court to state the nature of the action, and no sensible man would fail to understand that the term "sale" implied a "delivery" of the property, especially where there is no controversy as to the delivery of the crates, the only question being as to whom they were sold.

Id.—ORIGINAL OBLIGATION AND PRINCIPAL DEBTOR—SECTION 2794, CIVIL CODE.—An instruction as to an original obligation and the principal debtor substantially in the language of section 2794 of the Civil Code in such a case is unobjectionable.

Id.—INSTRUCTIONS—THEORY OF CASE.—It is well settled that either party has the right to have an instruction given to the jury based upon his theory of the case, if there is any evidence to support it.

Id.—INSTRUCTIONS—ORIGINAL PROMISE.—In such a case, where the important issue in the case was whether the defendant was liable on an original promise or only on a conditional one, and the jury was fully instructed, at the request of the defendant, as to the distinction between a guaranty and an original promise, there was no error in an instruction that "if you are satisfied from all the evidence adduced in this case that the promise of defendant, if any was made, was an original promise to pay for the crates and not a conditional one, I charge you that it is your duty to find that fact in favor of plaintiff in this action." Such an instruction could hardly be understood as meaning otherwise than to find that the promise of defendant was "an original promise to pay for the crates," if the jury were satisfied from the evidence that an original promise was made by the defendant.

Id.—INSTRUCTION—FURNISHING CRATES TO THIRD PARTY—CONDITIONAL PROMISE.—Where there was no dispute in such a case that the crates were "furnished" to the third party, and it was the contention of defendant throughout the trial not only that this was the fact, but that the third party alone was liable for the purchase price, the reference to such fact could not be prejudicial to the defendant in the following instruction: "The fact that the crates in question were furnished to Gutman by the plaintiff is not of itself absolutely sufficient to show conclusively that the promise of defendant, if any were made, was a conditional one."

APPEAL from a judgment of the Superior Court of Merced County and from an order refusing a new trial. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

F. G. Ostrander, for Appellant.

F. W. Henderson, for Respondent.

BURNETT, J.—The action was to recover the sum of six hundred dollars for certain sweet potato crates alleged to have been sold and delivered to defendant. The main controversy is as to whether the crates were sold to defendant or to a certain Mr. Gutman, the evidence being sharply conflicting on this point. Closely related to the foregoing is another contention by appellant that if it ever made any promise to pay plaintiff for the crates it was a conditional one—that is, it would pay if Gutman did not, and, the proviso not being in writing, it was void by reason of subdivision 2 of section 1624 of the Civil Code.

Preliminarily, we may mention certain facts that are undisputed. Plaintiff was engaged in the business of retailing lumber and box materials and the defendant, principally in colonizing land although organized for the purpose also of buying and selling personal property. One of the latter's customers was George Gutman, to whom it had sold a tract of land, the payment therefor to be made out of the crops raised. Said crops were to be marketed in the name of the corporation and the proceeds divided, one-half to be Gutman's and the other to be applied first on the interest and the balance on the purchase price. Among defendant's employees was a salesman by the name of V. H. Gerard, who testified that during the time in controversy one Mr. Cone had control of defendant's business at Merced where the crates were sold. As to the sale itself we must, of course, accept the account that favors respondent's contention. Therefore, we refer specifically to the testimony of J. H. Routt, the president and manager of plaintiff: "About September the fifth to the tenth, in 1909, Mr. Gerard came to my office with a stranger that he introduced as Mr. Gutman, and said: 'We want to get your price on sweet potato crates,' and said that the Co-operative Land & Trust Company had sold Mr. Gutman a piece of land; . . . he spoke of Mr. Gutman as being a model farmer, the amount of crop was then growing and I then gave him prices on sweet potato crates, carload lots to be delivered at Atwater or Livingston, the price named was fifteen cents

per crate; Mr. Gerard then said to me, 'there will be no money available to pay for those crates until they have made a shipment and we have received the returns, and we would like thirty days' time; I told Mr. Gutman the prices quoted were very low and were cash prices, but I says, if you people, referring to the Co-operative Land & Trust Company will pay me, I will give you the time and Mr. Gerard said that is all right, we will do that and stated something of the condition of the contract, it being a crop contract and the money would come through their hands. Mr. Gutman had very little to say; Mr. Gerard said we are not ready to close the deal with you today or at this time, as we want to get prices from the Merced Lumber Company and wherever we can buy them the cheapest we will have to place the order. They left my office and in the afternoon I was anxious about the sale and I went to the Co-operative Land & Trust Company's office and inquired for Mr. Gerard, but did not see him, and Mr. Cone told me that Mr. Gerard was out just then, but would possibly be in soon. I stated to Mr. Cone what I would like to see Mr. Gerard for and I told him my conversation with Mr. Gerard at my office and what he had said to me about Mr. Gutman farming the land and crops and so forth and Mr. Cone also praised Mr. Gutman very highly and seemed to think he was one of the best customers they had sold land to . . . but Mr. Cone said, Mr. Gerard is handling this matter, you take the matter up with him and whatever he does will be all right. . . . Later I telephoned from the Klamath Lumber Company's office to Mr. Gerard. He was in the Co-operative Land Company's office and asked him about the order. He says, 'Mr. Gutman has gone home and we have not decided just what we will do; we have quotations from the Merced Lumber Company just the same as yours fifteen cents per crate, but I will try to favor you with the business. I will turn it your way if I can. I am going out to see Mr. Gutman to-morrow morning and I will let you know after I return.' In the afternoon of the following day Mr. Gerard called me up on the telephone and says, 'Mr. Routt, you can ship a carload of sweet potato crates to Mr. Gutman at Livingston. I asked him how many I should ship and told him that 3000 would make a minimum car, but we usually ship 3500 to 4000 crates to a car and he said ship 4000, that he would probably want more than that. . . . I ordered the

crates by telephone from Sonora and they were shipped and when the thirty days had expired, possibly a few more, I went to Gerard and told him that the time was up and that I would like to have our money. Well he says I will see Mr. Gutman in a day or two; I don't think he has any returns or there has been any returns on the shipment of sweet potatoes. I said all right and in a few days after that I saw him again and he made the same excuse and I said, Mr. Gerard, I need my money and have to pay for those crates, you pay me and then you can get your money from Mr. Gutman. I understand you get a portion of the crop anyway and you can secure yourself. He is a stranger to me and I am looking to you for my money, and not to Mr. Gutman. All right, he said, we will soon get that adjusted. . . . I never presented any bill to Mr. Gutman in the matter; never went to see him; I make out all the bills in the office; I never wrote to him; I made no attempt to collect from Mr. Gutman because I had an agreement with the Co-operative Company people, with Mr. Gerard, and I did not look to Mr. Gutman at all. The reason I entered up the bill in my book against Gutman is that Mr. Gerard told me to ship the shucks to Gutman. . . . I thought they were all in a sense parties to the deal because Mr. Gerard had explained to me that the money— they had the handling of the money from the crops to some extent at least—and I expected that if there was anything due from Mr. Gutman they would collect it and of course they being obligated to me for the payment, would pay me. It was not my idea that I was selling to both of them. I understood that I was selling to the Co-operative Land Company for Mr. Gutman.''

It would be difficult to select more apt language than the foregoing to express an agreement of sale to the defendant. The contract was made entirely with Mr. Gerard who assumed to represent appellant; Mr. Routt declared that ''if you people (referring to defendant) will pay me, we will give you the time,'' and Gerard thereupon said, ''that is all right, we will do that.'' Furthermore, it appears that Routt understood that he was selling to the Co-operative Land & Trust Company and that he looked entirely to it for payment. It thus appears that the creditor parted with value and entered into the obligation in terms and under circumstances

such as to render defendant not simply the principal debtor but the only debtor in the case.

It is equally plain that, according full credit to the testimony of Mr. Routt, no question of guaranty could arise. The only other consideration remaining as to the obligation of defendant to pay the purchase price of the crates involves the authority of Gerard to make the contract for defendant. There is no doubt, however, that Cone had full power in the premises and his statement to Routt would bind the company and preclude any denial of Gerard's authority after plaintiff, in reliance upon it, had sold the crates.

In view of the foregoing, we do not see how it can be seriously argued that the evidence is insufficient to support the conclusion that the crates were sold to defendant, that it promised to pay for them and that upon such promise plaintiff relied in delivering said property.

The alleged errors in the admission and rejection of testimony are hardly of sufficient gravity to merit specific notice. It was proper for plaintiff to show that Gutman was in Oregon in explanation of the circumstance that he was not called as a witness. Besides, the fact sufficiently appeared without objection.

The following question was asked of Mr. Routt: "And as president of the corporation, as the manager of the plaintiff in this action, Mr. Routt, did you have any agreement with the defendant in this action in the year 1909"? Technically speaking, the question probably was objectionable, but the answer was entirely without prejudice as, from the facts testified to by the witness, the conclusion necessarily followed that the agreement was with defendant and said testimony made it obvious that such was the opinion of the witness.

We can see no valid objection to this instruction, given by the court on request of plaintiff: "Plaintiff brings this action to obtain a judgment against defendant for the sum of six hundred dollars alleged to be due plaintiff from defendant for the sale of 4000 sweet potato crates for which plaintiff alleges defendant promised to pay; that defendant promised to pay it at the rate of fifteen cents per crate, no part of which sum plaintiff alleges has ever been paid." It was proper for the court thus to state the nature of the action, although it is quite probable that the jury had already been fully advised of the claim of each party. There could be no

reasonable apprehension that any sensible man would fail to understand that the term "sale" implied a "delivery" of the property. Besides, there was no controversy as to the *delivery* of the crates, the only question being as to whom they were sold.

The instruction as to an *original obligation* and the *principal debtor* is substantially in the language of section 2794 of the Civil Code and, as a principle of law, is unobjectionable. That it embodied the theory of plaintiff as to the character of the transaction in question cannot be doubted and that there was evidence to support that theory has already appeared. It is well settled, of course, that either party has the right to have an instruction given to the jury, based upon his theory of the case, if there is any evidence to support it. (*Buckley* v. *Silverberg,* 113 Cal. 673, [45 Pac. 804].)

We think it is plain enough to what fact the court referred in this instruction: "If you are satisfied from all of the evidence adduced in this case that the promise of defendant, if any was made, was an original promise to pay for the crates and not a conditional one, I charge you it is your duty to find that fact in favor of plaintiff in this action." It could hardly be understood as meaning otherwise than an instruction to find that the promise of defendant was "an original promise to pay for the crates" if the jury were satisfied from the evidence that an original promise was made by defendant. This was the important issue in the case and while the instruction, embodying as it does, such a truism, was not necessary, it could have done no harm. It may be said in this connection that the distinction between a *guaranty* and an *original promise* was fully set forth in instructions given by request of defendant and nothing was left uncertain as to the meaning of those terms.

As we view it, the only ground for plausible criticism as to the instructions is afforded by this direction: "The fact that the crates in question were furnished to Gutman by the plaintiff is not of itself absolutely sufficient to show conclusively that the promise of defendant, if any were made, was a conditional one." As to the statement of fact in the first part of the instruction, it may be said that there was no dispute that the crates were "furnished" to Gutman. They were shipped to him for use on the land that he had purchased from appellant. In fact, it was the contention of

defendant throughout the trial not only that the crates were furnished to Gutman but that he alone was liable for the purchase price. The reference to said circumstance as a fact could not therefore be prejudicial independent of the consideration that said fact was favorable to appellant. It is true also, as a matter of law, that said fact was ''not of itself *absolutely sufficient* to show *conclusively* that the promise of defendant, if any, was a conditional one.'' If ''*absolutely* conclusive,'' all the foregoing discussion would be idle as no other alternative would have been left the lower court but to direct a verdict for defendant. The truth is, of course, that said fact was a circumstance to be considered by the jury in determining whether defendant was primarily liable for the purchase price of the crates, but it is not at all conclusive of the question.

There is more reason for contending that the instruction is somewhat argumentative and for that reason should have been omitted, but it is entirely apparent from the whole charge, full, fair, and complete as it was in its entirety, that the jury were not misled by the court in any respect.

We feel satisfied that there is no substantial merit in any of the points made by appellant, and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.