[Civ. No. 1306.    Third Appellate District.—December 24, 1914.]

FLORENCE I. RALEIGH et al., Appellants, v. GEORGE H. LEE, Respondent.

CONTRACTS—PURCHASE OF REAL PROPERTY—SPECIFIC PERFORMANCE— DAMAGE FOR BREACH OF CONTRACT—AGENCY—LACK OF AUTHORITY TO PLEDGE PROPERTY.—In this suit for the specific performance of a certain contract for the purchase of certain real property and for damage for the breach of another such contract, it is held that the facts and circumstances fully warranted the court in finding that one of the plaintiffs was authorized as the ostensible agent of the other plaintiff, his wife, to purchase the property in question and to make the payments thereon; but that the facts do not justify the conclusion that he had authority to pledge the property to secure the payment of money borrowed for his own use.

ID.—ACTUAL AND OSTENSIBLE AGENCY—DEFINITION OF.—An agency is either actual or ostensible, and it is ostensible when the principal unintentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him.

ID.—SCOPE OF OSTENSIBLE AGENCY—NOTICE OF—RIGHTS OF THIRD PARTIES.—Within the scope of his ostensible authority the agent represents the principal and all liabilities that would accrue to the agent within such limits accrue to the principal; and, as against the principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought in good faith and the exercise of ordinary care and diligence to communicate to the other. A principal is bound by the acts of his agent, under a merely ostensible authority, to those persons who have in good faith, and without want of ordinary care, incurred a liability or parted with value upon the faith thereof.

ID.—PROOF OF AGENCY—TESTIMONY OF AGENT COMPETENT—EXTRAJUDICIAL DECLARATIONS OF AGENT INADMISSIBLE.—The rule is well established that the fact of agency when it rests in parol may be established on the trial by the testimony of the agent himself; his testimony is admissible and competent to prove the agency and the nature and scope of his authority and to bind his principal thereby; but it is equally well established that extra-judicial statements or declarations *in pais* of one assuming to act as agent are inadmissible and incompetent to establish the fact of agency.

ID.—LACK OF AUTHORITY IN AGENT TO BORROW MONEY—WANT OF NOTICE TO PRINCIPAL—EXECUTED CONTRACT.—In such a case, where there was no evidence that the husband was the wife's agent or authorized by her to borrow money upon the security of the wife's property, except the declarations of the husband, which were in-

competent, notice of the transaction cannot be imputed to the wife under section 2332 of the Civil Code; nor can such an agreement be upheld as an executed agreement binding the wife, the husband not having had any authority, actual or ostensible, to make the agreement, and it not appearing that he was the general agent of the wife.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. William S. Wells, Judge.

The facts are stated in the opinion of the court.

Austin Lewis, and R. M. Royce, for Appellants.

Clinton G. Dodge, for Respondent.

CHIPMAN, P. J.—The complaint embraces two counts— first, for the specific performance of a contract to convey certain real property, lots 2 and 3, Fruitvale Boulevard Tract, Alameda County, "Exhibit 1"; second, for damages for breach of a contract to convey lots 73 and 74, in above tract, "Exhibit 2." Concerning the lots 2 and 3, it is alleged that plaintiff, Florence I. Raleigh, on May 3, 1906, entered into a contract with defendant whereby he agreed to sell and transfer to plaintiff Florence or her assigns and she agreed to purchase said lots for the sum of four hundred dollars, payable in monthly installments, together with interest; that said plaintiff, Florence, has complied with the terms of said contract on her part and has paid thereon the sum of $548.90, and, on April 24, 1912, demanded of defendant to comply with said contract on his part which he refused to do and that on said last-named day the said lots were worth of the value of one thousand eight hundred dollars.

In the second count it is alleged that, on January 18, 1907, one Frances A. Raleigh entered into a contract, similar in its terms to that above mentioned, for the purchase of said lots 73 and 74, for which she agreed to pay to defendant the sum of five hundred dollars, payable in monthly installments; that, on February 7, 1907, she assigned her interest in said contract to said L. A. Raleigh, and said L. A. Raleigh, on April 18, 1912, assigned his interest therein to plaintiff, Florence I. Raleigh, all with the knowledge of defendant; that plain-

tiff, Florence, and her assignors have complied with all the terms of said contract; that, on April 24, 1912, plaintiff, Florence, tendered to defendant the sum of three hundred dollars, being more than the balance then due on said contract, and demanded a deed, which defendant refused to execute; that, at the time of said demand, the value of said lots was the sum of one thousand five hundred dollars; that plaintiff, Florence, and her assignors have paid the sum of three hundred and fifty-five dollars on said contract.

Defendant denies that plaintiff has complied with all the terms of said contract, "Exhibit 1," and on this behalf alleges, "that on or about December 14, 1910, plaintiffs borrowed from defendant and defendant loaned to plaintiffs the sum of $550.12, and that as a condition of said loan and as security for the payment of the same it was then and there agreed by and between plaintiffs and defendant that said sum of $550.12 should be added to and become a part of the contract price for the real property described on page 2 of said complaint ('Exhibit 1') and it was then and there further agreed by and between plaintiffs and defendant that plaintiffs should pay to defendant the sum of 8% per annum interest upon said $550.12 and upon the unpaid purchase price of said lots (describing them) and the said sum of $550.12 and interest thereon should become payable according to the terms as set forth in said contract" (plaintiffs' "Exhibit 1"); that, on April 17, 1912, there was due and owing on account of said contract the sum of $728.94, principal and interest, no part of which has been paid; that on said last named date defendant demanded of plaintiffs payment of said sum and tendered a deed to said lots, upon the payment of said sum, and that to pay the same or any part thereof plaintiffs and each of them refused; defendant admits the payment to him of $548.70 on said contract as changed as hereinbefore stated, but there remains due the said sum of $728.94; denies that the value of said lots is one thousand eight hundred dollars, or of any greater sum than eight hundred dollars.

For answer to the second count defendant denies that he is the owner of lot 74 mentioned in "Exhibit 2," and as to said lot alleges that, by direction of the then owner, he conveyed said lot to one T. B. Draper, on or about March 24, 1909, who now owns said lot, and that on said date there had been paid on said contract the sum of $306.99; denies that

plaintiff and her alleged assignors have complied with all or any of the terms of said contract, attached to plaintiffs' complaint ("Exhibit 2"), and alleges that there is now due on said contract the sum of $306.99 and that defendant is ready and willing to convey said lot 73 upon payment thereof; denies the alleged tender and denies that the value of said lots is one thousand five hundred dollars, or of any sum greater than eight hundred dollars.

The court found that plaintiff Florence has not complied with the terms of the contract, "Exhibit 1"; that said contract was changed, on or about December 10, 1910, as alleged in the answer and that the sum of $548.70 was paid thereon as changed and that, on April 24, 1912, there was unpaid and still due the sum of $728.84, for which payment was then demanded and deed tendered, but payment was refused; that defendant has been at all times, and now is, able, ready, and willing to comply with the said contract as the same has been changed; that said lots mentioned in "Exhibit 1" were not, on said date, of the value of one thousand eight hundred dollars, or of any value greater than eight hundred dollars.

As to the lots mentioned in the second count of the complaint, the court found: that defendant is not the owner of lot 74, but that ever since March 24, 1909, T. B. Draper has been and now is the owner thereof; that, on February 7, 1907, Frances A. Raleigh, named in said contract, assigned her interest to said L. A. Raleigh and, on April 18, 1912, said L. A. Raleigh assigned all his interest therein to said Florence I. Raleigh; that neither of said persons has complied with the terms of said contract, "Exhibit 2," and that neither of said persons, on April 24, 1912, nor at any other time, tendered to defendant three hundred dollars, or any money for a deed from defendant to said Florence; that, about March 24, 1909, there had been paid on said contract three hundred and fifty-five dollars and said L. A. Raleigh was then the owner thereof and while such owner he directed defendant to convey lot 74 to said Draper, and thereupon defendant did convey said lot to said Draper, who paid one hundred and fifty dollars on account of said contract, "Exhibit 2," making a total of five hundred and five dollars paid on account thereof and there is now unpaid thereon the sum of $132.51; that said lots mentioned in "Exhibit 2" were not, on April 24, 1912, nor at any time, of the value of one thousand five hun-

dred dollars, or of any value greater than eight hundred dollars.

As conclusion of law the court found that plaintiffs are not entitled to recover anything from defendant nor to any relief prayed for and that defendant is entitled to recover his costs.

The contention of appellants upon the first count of the complaint is—That plaintiff Florence I. Raleigh paid all the money she had agreed to pay under the contract, "Exhibit 1"; that her husband, L. A. Raleigh, was not a party to it, and that no written or other authorization to him by her to change said contract was shown; that she was not present at any of the interviews between her husband and defendant or his attorney-in-fact and son, George F. Lee, who attended to much of the business of defendant; that the change made in this contract, or novation claimed by defendant, was without her knowledge or consent and was signed by L. A. Raleigh acknowledging the loan to him of $550.12; that the writing was admitted over plaintiff's objections and that any declarations he may have made in the matter were not in the presence of the plaintiff, his wife, and were incompetent and were insufficient to sustain the findings.

Respondent's reply is—That there is ample evidence to establish an ostensible agency on the part of plaintiff, L. A. Raleigh, to bind his wife, Florence, the other plaintiff, in changing the contract so as to add $550.12 thereto "and to show that such change was fully executed according to the law of this state."

The findings and judgment hinge upon the agency of plaintiff, L. A. Raleigh. "An agency is either actual or ostensible." (Civ. Code, sec. 2298.) "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, sec. 2300.) Within the scope of his ostensible authority the agent represents the principal and all liabilities which would accrue to the agent within such limits accrue to the principal (Civ. Code, sec. 2330); and, as against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought in good faith and the exercise of ordinary care and diligence, to communicate to the other. (Civ. Code, sec. 2332.) "A principal is bound by the acts of his agent, under a merely ostensible authority, to those persons

only who have in good faith, and without want of ordinary care, incurred a liability or parted with value upon the faith thereof.'' (Civ. Code, sec. 2334.))

It seems to us that in view of the foregoing principles the facts fully justified the court in its findings that in making the contract, ''Exhibit 1,'' and the payments for the lots indorsed thereon, L. A. Raleigh was acting as his wife's agent. There was evidence that this contract had its origin in a memorandum to which plaintiff L. A. Raleigh signed the name of plaintiff Florence I. Raleigh and his own name as a witness and he paid a deposit to defendant on account of a contract to be given upon a further payment. Plaintiff Florence was not present, but her husband represented that he was acting for his wife, and by his direction the contract was subsequently drawn in her name as the purchaser; this contract was in duplicate; Raleigh took a copy and got his wife to sign it and returned it to defendant; the copy signed by defendant was witnessed by Raleigh and was delivered to him and he later made affidavit to the genuineness of the signature of defendant and caused the instrument to be acknowledged and he himself had it recorded. His wife never appeared personally in the transaction; neither defendant nor his attorney-in-fact knew Mrs. Raleigh personally, and they testified that they had no recollection of ever having seen her; that they dealt with her husband in good faith, fully believing that he was her agent and authorized to represent her in all the transactions concerning the contract. The payments were made monthly or bi-monthly by Raleigh, personally, from its date, May 3, 1906, to February 9, 1912.

The more serious question relates to the $550.12 which defendant loaned to L. A. Raleigh and which defendant claims was secured by the contract, ''Exhibit 1.'' Witness Chas. F. Lee, defendant's attorney-in-fact, testified for defendant as follows: ''Mr. Raleigh came into my office. Mr. Nead was either there or came in—and asked me if I would loan him $550.00, that he wanted to give Mr. Nead $200.00. He wanted to get $350.00 more. I rather demurred to it, didn't want to do it. Finally, through the persuasion of Mr. Nead, or Mr. Raleigh, Mr. Nead seemed to be quite angry, and Raleigh seemed to be very much perturbed, and Raleigh said, 'You can apply it on account of my lots 2 and 3,' and after thinking it over for some little time, I said 'Well, Raleigh, all right;

I don't like to do it, but I will do it, but I want you to give me some little paper that will show that you have the right to get this money, so that I will have the right to apply it to the account.' I said, 'Does your wife know about this transaction? Have you the right to go to work and apply this money to her contract?' I said 'this contract,' and he says, 'I have; I am her agent and I have the right to do it, because I am her husband and am interested in the property as much as she is.' Said I, 'If those are the conditions, I will go to work and let you have the money,' which I did. The money was loaned to him with the understanding that it was to run on the contract then in existence, and bear the same rate of interest, to be repaid in the same way. . . . Q. Just finish this conversation. A. I loaned him the money on those conditions. Mr. Nead was present. I turned around to my stenographer and I dictated this agreement here. She took it off in a stenographer's book, and then wrote it on the typewriter and brought it back, and I read it in the presence of Mr. Raleigh and Mr. Nead both, and he said, 'That is all right,' and signed it. Q. In what way did you give him the $550? A. It is pretty hard for me to tell you that right now, Mr. Dodge, unless I look further into it. $200 of it, I can tell by my books, I applied to the account of Mr. J. M. Nead. Q. Have you got your book here? A. Yes. Q. Which book do you want? A. The large one. On December 14th I gave Mr. Nead a receipt for $200, of the $550. Q. Now, state whether or not, to make this clear, whether that was done at Mr. Raleigh's request? A. Yes, sir. And Mr. Nead at that time gave me $104 in addition, for which I gave him a separate receipt, because I didn't know anything about Mr. Nead's and Mr. Raleigh's transactions at all. Q. Did you let Mr. Raleigh have the sum of $550.12 at that time? A. Yes, sir. Q. Now, the paper that he signed is the one that you say he gave to you? A. One that I gave to him and he gave back to me, yes, sir."

The paper referred to reads as follows: "Fruitvale, Cal. December 14, 1910. Mr. George H. Lee. Dear Sir: Kindly apply to my account the sum of five hundred fifty and 12/100 dollars, this day received from you. In consideration of which sum, I hereby agree to pay 8% per annum upon lots Nos. 2 and 3, in block P, of the Fruitvale Boulevard Tract, to be repaid in accordance with several contracts now

in existence in the Fruitvale Boulevard Tract, Fruitvale, Alameda County, California. Witness my hand and seal this 14th day day of December, A. D. 1910."

The letter referred to was written by Mr. Lee, April 17, 1912, long after this money was borrowed and shortly before the complaint was filed. On plaintiffs' "Exhibit 1" is the following indorsement: "Dec. 14, 1910. $550.12 added to this debt. L. A. R.", as to which plaintiff L. A. Raleigh testified:

"Mr. Dodge. Q. There is one matter I overlooked, I think, Mr. Raleigh, in regard to this contract on lots 2 and 3. I call your attention to an indorsement on there, dated December 14, 1910, '$550 added to this debt, L. A. R.' Who wrote that? . . . A. I think I wrote that without my wife knowing anything about it, or without my telling Mr. Lee that my wife knew anything about it. . . .

"Q. That is the $550.12 that Mr. Lee testified to about your borrowing, isn't it? A. I believe so, and the same money that I was paying, according to the agreement and up to the time I received the letter from Mr. Lee.

"Q. Did you have any authority as agent for your wife to borrow that sum of $550.12 on that contract for lots 2 and 3, and make it a part of that contract? . . . A. I had no conversation with my wife about it whatever, and she knew nothing about it.

"Q. Did you have any authority? Answer 'Yes' or 'No.' A. What is the question?

"The Court. Q. Did you have any authority? A. No, sir.

"Mr. Dodge. Q. You wrote that indorsement on that, '$550.12 added to this contract' on that date, December 14, 1910, did you not? A. It looks like my writing."

Witness Lee testified that he paid Nead two hundred dollars of this money by crediting him with that amount on a contract for the purchase of a lot by Nead from defendant and the balance was paid to Raleigh.

All this evidence was admitted over plaintiffs' objection that it was irrelevant, immaterial, and incompetent; that no authority was shown from plaintiff Florence to borrow this money, either in writing or otherwise, nor was there any evidence that she had any knowledge of the transaction. Witness Lee testified that he told Raleigh: "I want you to give me some little paper that will show that you have the right

to get this money, so that I will have the right to apply it to the account.'' It seems, however, that defendant did not insist upon Raleigh's getting authority from his wife, as defendant at first required, but acted upon Raleigh's assurance alone that he was his wife's agent and ''had the right to do it.'' It clearly appears that the money was loaned to Raleigh individually, of which two hundred dollars was to pay a debt Raleigh owed to Nead and by Nead to defendant. The evidence tending to show an ostensible agency related to the original contract for the purchase of lots 2 and 3 for plaintiff, Florence, to whom alone the sale was made and with whom alone defendant contracted and in whose name receipts were given by defendant. There is no evidence that plaintiff, Florence, had any knowledge of or interest in this loan and plaintiff Raleigh testified that she had none. The evidence to the contrary rests entirely upon the declarations of Raleigh to defendant at the time the latter made the loan. It is true that Raleigh made an indorsement on the contract which tended to show that this money was to be added to the debt represented in the contract for the sale of lots 2 and 3, but no authority from his wife to enter into any such contract or knowledge to her that he had done so was shown.

"The rule is well established," said the court in *Kast* v. *Miller & Lux*, 159 Cal. 723, 727, [115 Pac. 932, 933], "that the fact of agency when it rests in parol may be established on the trial by the testimony of the agent himself. His testimony is admissible and competent to prove the agency and the nature and scope of his authority and to bind his principal thereby." (Citing numerous cases.) . . . "It is equally well established that extra-judicial statements or declarations *in pais* of one assuming to act as agent are inadmissible and incompetent to establish the fact of agency." (Citing many cases.) We do not feel warranted in assuming from the facts and circumstances, which in our opinion established an ostensible agency in Raleigh to represent his wife in the purchase of the lots and to make the payments and otherwise act as her agent in respect of the purchase, that he also had authority to borrow money for his own use and pledge these lots as security for payment. The only fact shown which would seem to indicate that plaintiff Florence must have had some knowledge of these loans to her husband is the indorsement on the contract, "Exhibit A," made part of her complaint,

to wit: "Dec. 14, 1910. $550.12 added to this debt. L. A. R." But there is no evidence that Mrs. Raleigh ever saw this duplicate copy of the contract signed only by defendant, or that she had any knowledge of this indorsement at any time prior to the filing of the complaint in the action. Her husband attended to all the business relating to the making of the contract and of payments on it, and, so far as appears, kept it in his possession. It is not claimed by defendant that the husband was a party to this contract or had any interest in it. He was joined as plaintiff because he was the husband of Florence.

We do not think that notice to plaintiff, Florence, can be imputed under section 2332 of the Civil Code, for the reason that there is no evidence that Raleigh was his wife's agent or authorized by her to borrow money from defendant, except the declarations of the agent, which, as we have seen, were neither admissible nor competent to prove agency. Nor can it be said that this was an executed agreement binding upon Mrs. Raleigh, for the reason that her husband had no authority, actual or ostensible, to make the agreement and he could not bind her by executing a contract he had no authority from her to make. If Raleigh had been the general agent of his wife there would be some ground for holding that both "are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." (Civ. Code, sec. 2332; *Gallagher* v. *Equitable Light & Gas Co.*, 141 Cal. 699, 705, [75 Pac. 329].) But we think the evidence does not warrant our holding that Raleigh was the general agent for his wife or that any agency was established to act for her beyond matters pertaining to the making and execution of the contract as signed by her.

As to lots 73 and 74 there is but little to be said. There was evidence sufficient to justify the finding that while L. A. Raleigh was the holder and owner of the contract, "Exhibit 2," and long before he assigned it to his wife, Florence, he directed defendant to convey lot 74 to Draper and defendant credited what he received from Draper on the contract; that there remains still due defendant on this contract the sum of $132.51. No question of agency is involved and it is admitted by plaintiffs that "the last assignment (of this contract to Florence) was subject to any equitable setoff or claim

of Geo. H. Lee against L. A. Raleigh existing at the time of the assignment.''

Plaintiff contends that ''the judgment should be reversed and the cause remanded with instructions to specifically enforce the contract set forth in the first count of the complaint.'' We do not see our way to do this in view of the findings. The amount found to be due on this contract is made up in part, erroneously, we think, of the money borrowed by L. A. Raleigh from defendant and interest thereon. There is a finding that plaintiff, Florence, paid $548.70 on the contract, but payments after December 14, 1910, the court found were made on the contract as changed. We are not authorized to make findings that these payments should be treated as made on the contract unchanged.

By the terms of the contract, plaintiff, Florence, was to pay four hundred dollars for the lots and this by installments of ten dollars monthly with interest at 8% upon unpaid balances. What this interest would amount to for a period of six years it is not our province to determine. Apparently, the interest added to the principal would not amount to $548.70. The court found that plaintiff has not paid in full, and although this finding is erroneously based on the further finding that she is liable under the contract as changed we think the cause must be remanded for a determination as to whether or not plaintiff has paid in full on the contract unchanged.

The judgment and order are reversed as to the first cause of action stated in the complaint and are affirmed as to the second cause of action therein stated.

Hart, J., and Burnett, J., concurred.