[Civ. No. 3734.   Third Appellate District.—November 1, 1930.]

A. M. DUNLAP et al., Appellants, **v.** A. J. DEAN,
Respondent.

· Carter & Smith and Annette Abbott Adams for Appellants.

Carr & Kennedy for Respondent.

MR. JUSTICE PLUMMER DELIVERED THE OPINION OF
THE COURT.—In this action for the value of goods, wares
and merchandise furnished to F. E. Brown, now deceased,
judgment was entered in favor of the respondent, and
plaintiffs appeal.

The record shows that during the years 1923, 1924, and
1925, F. E. Brown owned a band of sheep which was kept
and cared for at a camp about 12 miles from a place called
Glenburn.   Prior to 1925 it appears that the sheep were
cared for by Dean, upon shares, and that in the latter part
of the year 1924, A. J. Dean and Brown Brothers entered
into a lease relative to the management and control of the
sheep, whereby it was provided that Dean should take care
of the sheep, defray the expenses thereof, etc.   The lease
also provided that all moneys paid out or advanced by
Brown Brothers should be repaid out of the moneys realized
from sale of the sheep or from sale of wool, etc.   The lease

also provided for a division of the sheep at the expiration of the term of the lease. The record also shows that during the years 1923 and 1924 a general merchandise store was conducted at Glenburn by one J. H. Creighton. This store was conducted by Creighton until the first of the year 1925, upon which date it was sold to the plaintiffs in this action. The record further shows that A. N. Dunlap, one of the plaintiffs in this action, was, during the years 1923 and 1924, an employee and clerk in the Creighton store, and that early in the year 1924, F. E. Brown called at the Creighton store in Glenburn, and in the presence of A. M. Dunlap, told Creighton to let A. J. Dean and the boys (referring to the sons of A. J. Dean), have stuff, merchandise, and to send the bill to him or to Mr. Martin, and he would settle it. In this conversation, F. E. Brown also stated that if the bills were sent to Dean, he, F. E. Brown, would settle the bills. The record further shows that Brown stated he would pay the bills for the merchandise. In pursuance of this arrangement the Creighton store furnished the goods, wares and merchandise which went to the Dean sheep camp, the bills for which were sent to F. E. Brown at his residence in Chico, and paid by him from time to time as the bills were received. The record likewise shows that during all of the time the account was carried in the name of A. J. Dean, and it appears from the record that the sheep camp was spoken of as the ''Dean Sheep Camp''.

After the plaintiffs, on the 1st of January, 1925, had become the owners of the Creighton Merchandise Store, at Glenburn, F. E. Brown ordered a ton of salt to be sent to the Dean Sheep Camp, and thereafter paid for the same.

Following the transactions which we have here stated, it appears that there was ordered by the Deans during the month of July, 1925, merchandise to the value of $77.14. Included in this order were raisins, peaches, flour, coffee, shoes, pineapples, potatoes, butter, macaroni, soap, inner tube for automobile tire, knives and spoons, cheese, eggs, frying-pan, etc. This bill, as stated, was sent to F. E. Brown, at his residence in Chico, who thereafter sent his check to the plaintiffs in payment therefor. Following this, the Deans, including the boys, and a man by the name of Brown, who was working at the sheep camp, called at the store and purchased supplies during the months of August,

September and October, the three bills aggregating the total sum of $349.26. No reply was made by Brown to the receipt of the bills for August, September and October, until some time during the month of November, at which time Brown wrote to the Glenburn Mercantile Company (being the plaintiffs herein), the following letter:

"A few days ago I got up out of a sick bed and my mail was turned over to me and I find some bills charged to A. J. Dean, and on those bills I find $288.94 charged to him that does not belong to him, or to the sheep. Some time early in the summer a bill came to me of $77.14 that showed on its face that it had been purchased by A. J. Dean. I sent you check for same and when I saw Mr. Dean on October 26 I mentioned it to him and he knew nothing about it, said he had not got anything at Glenburn, and had not authorized anyone to get anything. I knew I had not for I had made arrangements with Summers & Company at Fall City to fill sheep camp orders and send me bills the first of the month, the same as I had made in 1924 with Mr. Creighton. I have sent those bills to S. E. Martin at Klamath Falls and told him to get in touch with A. J. Dean and have them straightened out. You can help straighten them out by sending S. E. Martin or A. J. Dean names of the party or parties that got the various bills and dates of same, for I find that one bill of stuff with name attached, and that is Cook and no initial. When I hear from you as to what they are doing about it I will write you. Looks to me like a bunch of crooks are trying to get in their work. Whoever they are they are laying themselves liable for buying goods under false pretenses. I don't see how Martin can do anything about straightening this out until you send them the names of the purchasers.

"Yours truly,

"F. E. BROWN."

The record shows that the bills referred to herein were made out just exactly in the same form as the bill for $77.14 paid by the respondent F. E. Brown. The bills likewise show that the goods purchased were similar in kind, and were such as would properly be used at a sheep camp in furnishing food to those engaged in looking after the sheep. Without quoting the bills it is sufficient to say that an examination of the bills exhibits just what we have

stated as to the character and kind of goods purchased. We may further state that so far as the record discloses the destination of the goods purchased, it shows that it went to the Dean sheep camp. The record further shows that the merchandise ordered from the Glenburn Mercantile Store in 1925 was ordered by the same people as ordered and obtained merchandise from the Glenburn store in 1924.

The testimony of the witness Creighton, relative to the directions given him by F. E. Brown to furnish supplies for the sheep camp, was substantially the same as the testimony of the witness A. M. Dunlap. In reply to the question if he had ever had any conversation with Mr. Brown in regard to payment of bills for supplies to the sheep camp, the witness Creighton replied as follows: "Well, I remember in particular the spring of 1924, Brown said for us to supply the sheep camp and let Dean have what supplies he wanted, and at the end of each month send the statement to him at Chico and he would send a check." No testimony was introduced contradicting this authorization on the part of Brown and the assuming of a direct obligation to pay the bills. It will be noticed that Brown did not say if Dean did not pay the bills when the statements were rendered, that he, Brown, would, but the statement was to let Dean have the supplies and he, Brown, would pay the bill.

While the record shows that in 1925 the sheep were leased to Dean, it also shows that prior to that year the sheep were being managed on shares. Just what the shares were or what the arrangement was the testimony does not disclose, but it does show that during all the time involved in this action the respondent was interested in the welfare of the sheep and furnished a basis for his direct obligation to pay for supplies. The defense of the respondent to this action is based upon the statute of fraud, on the theory that the circumstances disclose a promise to become responsible for the debt or obligation of another, and being oral, was therefore not binding. On the part of the appellants it is contended that the agency was established both directly and ostensibly. We think the record shows both. There was a direct agency during the year 1924, and if not a direct agency during 1925, then an ostensible agency so far as the proprietors of the Glenburn store were concerned. It will be observed that the letter written by the respondent

Brown on November 6, 1925, admits the agency of Dean for that year. The letter which we have quoted contains, among other things, the following: "I knew that I had not, for I made arrangements with Summers & Company at Fall City to fill sheep camp orders and send me bills the first of the month, the same as I had made in 1924 with Mr. Creighton." In other words, the agency of Dean had never been revoked, the only contention of the letter being that the writer had made arrangements with some other merchants to supply provisions.

It will also be noticed that the chief complaint of the respondent was that some of the goods did not go to the sheep camp. As we have said, the record sufficiently shows that this contention is untenable.

After the cause had been submitted for decision the plaintiffs moved the court for an order to reopen the case and permit the introduction of additional testimony of A. J. Dean, whose whereabouts had been discovered after the close of the trial and whose testimony would be to the effect that Dean was acting as the agent of Brown during the year 1925, and as such, purchased supplies from the plaintiffs in this action, which the respondent F. E. Brown was to pay for. The court denied this motion and thereafter entered judgment in favor of the respondent. This was followed by a motion for a new trial, in which an affidavit was made by the plaintiff A. M. Dunlap relative to the testimony of A. J. Dean, showing that his testimony could not have been obtained prior to the trial, by reason of not being able to discover his whereabouts, and also that the testimony would show that the supplies purchased from the plaintiffs in 1925 were purchased for the use of the sheep camp under the agreement that F. E. Brown was to pay for the same. Plaintiffs' motion for a new trial was also denied.

That the trial court, at the conclusion of the taking of testimony, had a correct view of the law which should be applied in the decision of this cause appears from the following excerpt of the court's statement set forth in the transcript: "The Court: I view it this way: Mr. Brown having made that arrangement with Mr. Creighton allowing the credit to be given and then paying the bills afterwards that were charged in the name of Dean, then when the

season came after Mr. Dunlap had taken up the property and taken over the mercantile business, then Dean comes there and secures goods and the first of the month the bill sent to them is paid, no objection is made to the bill, and it is paid; it was charged to Dean. Now, the rule of ostensible authority there would hold that he had the right to come and secure the goods as his agent; and then he allowed the next month and the third month bill sent in. I believe that the facts presented to the court in this case are sufficient for the court to hold that there is a direct liability on the part of the defendant Brown for the goods. Although they were charged to Dean, it was an account carried on by his predecessors."

A direct agency had been established during the year 1924. A direct obligation had been assumed by F. E. Brown for merchandise to be purchased by the Deans for the sheep camp. The plaintiffs in this action were entirely conversant with this agency, and knew that during the year 1924, supplies were sent from the Glenburn store to the sheep camp, bills made in the name of A. J. Dean, sent to F. E. Brown, and thereafter paid by F. E. Brown. The same procedure appears in the first bill sent by the plaintiffs to F. E. Brown. In the course of time after the sending of a statement made out in the name of A. J. Dean for supplies, a check in payment of the value of the goods was sent by Brown to the plaintiffs without any comment whatsoever. Thereafter, three statements were sent to him and no comment was made upon any of them, nor was anything written by Brown to the plaintiffs, or any word or intimation given by Brown to the plaintiffs that the obtaining of the merchandise, or any part thereof, was unauthorized, until the season had ended, when three bills were disputed on the theory that all the goods did not go to the sheep camp, and, as we have shown, the letter containing this statement contains likewise an express statement of Dean being authorized to purchase supplies, though at a different place.

The testimony of the witness Creighton, the former owner of the mercantile establishment at Glenburn, shows that the merchandise purchased for the sheep camp in 1923 and in 1924 was carried on the books in the name of A. J. Dean, and the same method of entering the account was adopted by the plaintiffs in this action. The authorization and direc-

tion being to let Dean have the goods and send the bill to the respondent takes away, we think, all the effect of the argument that as the account was carried in the name of A. J. Dean, it cannot be held as a direct obligation of the respondent, and therefore, the cases holding that where credit is given to the one who purchases the goods, or to the one to whom the goods are delivered, a third person promising to pay for the same stands only in the position of a surety and are not controlling. In this case it is not the collateral promise to answer for the debt or default of another; it is an instance of an owner of personal property directing supplies, or authorizing supplies to be furnished to the person in care of that personal property, upon the direct obligation of the owner giving such direction. From this it follows that the cases cited by respondent, where such circumstances were presented, are inapplicable, and need not be reviewed at length herein. Attention need only be given to the principal case of *McClenahan* v. *Keyes*, 188 Cal. 574 [206 Pac. 454]. In that case it appears that a mother whose daughter needed medical attention went to the plaintiff, asked him to give the necessary medical attention, stating that he would be well compensated for his services. There does not appear to be any express or direct promise on the part of the mother to pay for the rendering of the services as a direct and individual obligation on her part. The plaintiff in that case testified as follows: "I was assured to go ahead by all concerned and I was to be adequately remunerated; no definite statement as to who should do that, or as to how or what it should be." We have nothing of that kind in the case at bar. In the instant case we have a direct promise to start with, and a continuation of the dealing of the parties in pursuance of that promise, and then when the ownership of the store changed the same method of dealing. In other words, the dealing started upon a direct and not a collateral promise. Section 2307 of the Civil Code, reads: "An agency may be created and an authority may be conferred by a precedent authorization or a subsequent ratification." The record shows here a direct precedent authorization and a subsequent ratification of the authorization of the right of Dean to purchase goods for the sheep camp, and the direct obligation of the owner of the sheep to pay for the supplies so furnished. The

July bill of 1925, to which we have referred, being paid without any word of protest or any inquiry of the plaintiffs, but directly in accordance with the authority theretofore given to the merchandise establishment to furnish such supplies, of which the plaintiffs were aware, constituted, as well, a ratification of the authority of Dean to purchase supplies, and also a holding out that Dean was still the agent of the owner of the sheep for such purpose. In fact, the letter to which we have heretofore referred, written by the respondent, shows that such agency still existed, the change being only an unknown change to the plaintiffs, as to the place of making purchase.

■ Again, the acts of respondent we think come directly under the provisions of section 2317 of the Civil Code, which reads: "Ostensible authority is such as a principal, intentionally or by want of ordinary care, allows the agent to believe himself to possess." Whether intentionally or otherwise, it is evident that the payment of the July bill, rendered just as previous statements had been rendered, signified to the plaintiffs that the Deans had authority to make purchases during the year 1925, just as they had during the year 1924.

In 1 California Jurisprudence, page 742, section 42, we find the rule thus stated: "Where the third person relies upon an ostensible agency, he must give evidence of similar transactions in which the act of the agent was authorized or recognized; or, more accurately, since an ostensible authority may be conferred by the recognition of a single act of the agent if sufficiently unequivocal, the third person must show at least one specific instance in which a similar act of the alleged agent was authorized or recognized." The text-writer then goes on to show that different acts do not indicate authority. Here, however, the acts are all similar. Exactly the same kind of supplies, to all intents and purposes, were purchased in 1924 that were purchased in 1925; the account was carried in the same manner; statements were rendered each month to the respondent; checks forwarded by him in payment thereof; and nothing appeared to the contrary, or disputing the agency or questioning the bills in any particular, until after all the supplies had been furnished. When the respondent, upon receipt of the bill for merchandise for the month of July,

1925, forwarded his check in payment thereof, without any intimation that the right of Dean to make further purchases for the sheep camp had been rescinded, he held out to the plaintiffs, in view of the former dealings with the merchandise store, all that the law requires to establish ostensible agency.

Appellants and respondent refer to 21 Ruling Case Law, page 222, section 7, where it is said: "An agency, when shown to have existed, will be presumed to have continued in the absence of anything to show its revocation. Necessarily, however, the agency is terminated with the completion of the transaction for the accomplishment of which it was created, the appellant relying upon the first sentence, the respondents upon the last." The establishment of the agency in this case is apparently conceded. In this behalf it is contended by the respondent that the agency ended with the termination of the year 1924. However, the sheep camp remained in the same place. No notice was given of the termination of the agency. In fact, the duration of the agency was not limited in the original authorization to the year 1924. The act of the respondent was in direct line with the original authorization, and his own letter shows that the agency was not limited to the year 1924, as he had only made arrangements for the purchase of supplies elsewhere. Again, the agency was to purchase supplies for the sheep camp. The people in charge of the sheep camp required supplies just as necessarily in 1925 as they did in 1924; the sheep were at the same camp; the supplies were ordered for the same camp; and the first bill for supplies to the same camp was paid by the respondent without question. Any secret limitation of the authority of the Deans to purchase supplies at some other store would not affect the ostensible agency thus shown to exist.

Without quoting from the text of 2 C. J., page 460, we think the circumstances set forth herein estop the respondent from denying his liability for the merchandise furnished by the plaintiffs to the Dean Sheep Camp.

The respondent in this case, upon receipt of the July statement, was under the necessity of acting promptly. The law as stated in the case of *Quinn* v. *Dresbach,* 75 Cal. 159 [7 Am. St. Rep. 138, 16 Pac. 762], is controlling in this case. We quote from the syllabus: "Where a person

is the agent of another in the commencement of a transaction, and such other is chargeable with knowledge that the first is continuing to act in the matter in some way, the inference which he ought to draw is that the person assuming to act as agent is continuing to act in the same capacity in which he commenced, and it is negligence not to repudiate the agency." Here, it was simply a continuation of the former action, and the respondent is estopped by reason of his negligence in not immediately notifying the plaintiffs upon receipt of the July statement that the authorization theretofore given to purchase supplies and render him directly liable had been withdrawn.

The instant case is very similar to the circumstances involved in *Ford* v. *Lou Kum Shu*, 26 Cal. App. 203 [146 Pac. 199], where it was held that quiescence amounted to acquiescence. That was also a case where the principal had made arrangements with a merchandise firm to furnish supplies to another person, upon the direct obligation to pay therefor; not a collateral promise in the event that the person receiving the goods failed to pay for the same.

In *Meyers* v. *McKillop*, 37 Cal. App. 144 [173 Pac. 773], this court again held as follows: "Where services were performed for the benefit of a third party, in reliance that defendant would pay therefor, and defendant directly promised to pay, an original contract was thereby constituted with a sufficient consideration for its support."

A case where the same rule is involved is that of *Klamath Lumber Co.* v. *Co-operative Land & Trust Co.*, 25 Cal. App. 678 [145 Pac. 159], where this court held, under circumstances just as we are considering here, that a direct promise was made, from which it would necessarily follow that a continuation of the business, under like circumstances, would establish an ostensible agency and estop the party making the promise to deny its existence.

In the case of *Jan Wai* v. *Smith-Riddell Co.*, 55 Cal. App. 59 [202 Pac. 952], this court, in considering a somewhat similar question, held as follows (quoting from the syllabus): "Actual authority of the president of the corporation to make a particular contract may be proven by its silence after knowledge of facts connected therewith."

What we have said renders it unnecessary to consider whether the court abused its discretion in denying the mo-

tion of the appellants to reopen the trial before decision, and admit the testimony of A. J. Dean to establish his agency, which testimony, under the case of *Raleigh* v. *Lee,* 26 Cal. App. 229 [146 Pac. 696], was admissible. Likewise, we do not need to consider whether the court erred in denying the appellants' motion for a new trial in order to introduce such testimony.

Without further review of the authorities cited, we think the circumstances of this case clearly establish ostensible agency, if not actual agency, and that the respondent is estopped by reason of his negligence in not notifying the plaintiffs that the agency had been revoked, immediately upon the receipt of the bill for supplies furnished the sheep camp for the month of July, 1925, and permitting the plaintiffs to continue in the same line of action.

Necessarily the judgment of the trial court should be reversed and it is so ordered.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 1, 1930.