[Civ. No. 8039. Third Dist. Dec. 12, 1951.]

GERLINGER FOUNDRY AND MACHINE WORKS, INC. (a Corporation), Respondent, v. CRESCENT GOLD DREDGING COMPANY (a Copartnership) et al., Defendants; WALLACE R. LYNN et al., Appellants.

John G. Evans and Hiram R. Baker for Appellants.

Matthew E. Marsh for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff and respondent brought an action against Crescent Gold Dredging Company, a copartnership, Roy Mires, Joseph H. Garner, Wallace R. Lynn and J. Stanley Rising to recover the sum of $898.60, setting up six counts in its amended complaint.

In Count 1 it was alleged that defendant Crescent Gold Dredging Company was a copartnership; that the above-named defendants were copartners doing business under that name; that within four years last past said defendants became indebted to plaintiff in the sum of $898.60 upon an open book account for merchandise sold and delivered to defendants. Count 2 was the same as Count 1 except that it was alleged that the reasonable value of the merchandise was $898.60. Count 3 alleged that all four defendants were jointly associated in a common enterprise for profit, to wit, certain gold dredging operations at or near Coffee Creek, Trinity County, and became indebted to plaintiff in said sum of $898.60 for goods, wares and merchandise sold and delivered as aforesaid, no part of which has been paid. Count 4 was the same as Count 3, except that it alleged the reasonable value to be $898.60. Count 5 alleged that appellants Lynn and Rising, "by words spoken by them and through their agents, represented themselves, and by their conduct consent to the defendants Roy Mires and Joseph H. Garner representing them . . . to plaintiff, as partners in an existing or apparent partnership, to-wit, Crescent Gold Dredging Company; and plaintiff on the faith of such conduct and representations, gave credit to said Crescent Gold Dredging Company in the sum of Eight Hundred Ninety-eight and 60/100 ($898.60) Dollars . . . between the 19th of September, 1949 and the 8th day of November, 1949 . . ."; that defendants promised to pay plaintiff said $898.60, but no part thereof has been paid. Count 6 was the same as Count 5 and alleged that $898.60 was the reasonable value.

Defendants Mires and Garner filed no answer to the amended complaint, but defendants Lynn and Rising filed an answer denying all of the material allegations of the amended complaint and denying any indebtedness to plaintiff.

The trial court found:

"That in the months of October and November, 1949, defendants Roy Mires and Joseph H. Garner, copartners then doing business under the name of Crescent Gold Dredging Company, did through the words and acts of said Mires, of their general agent Thomas, and of their special agent Don-

aldson, order, purchase and take delivery of certain machinery and parts sold by plaintiff, which merchandise was of the reasonable value of $898.60.

"That at no time did defendants Wallace R. Lynn and J. Stanley Rising in fact become or ostensibly appear to be partners of defendants Mires and Garner.

"That defendants Lynn and Rising, as joint venturers between themselves, agreed to furnish money for the operations of Mires and Garner, as appears by their agreement of October 18, 1949; that defendants Lynn and Rising did in fact furnish the sum of $12,500, and established in the Wells Fargo Bank with that sum a fund from which they did in fact direct their agent Andrews to pay operating expenses of the Mires and Garner dredge; that some such expenses, including one earlier charge of plaintiff, were paid from this fund; that in mid-September, 1949, and in October 1949 defendants Lynn and Rising, by the words of one or the other of them, did in fact direct Donaldson (originally their duly authorized subagent for purposes of investigation) and defendant Mires, as their special agent, to purchase supplies needful for the dredge, charging said purchases to aforesaid fund; that defendants Lynn and Rising, by words of each of them, did in fact direct said special agents to refer sellers of said supplies to the Wells Fargo Bank for credit reference; that said bank, as special agent of defendants Lynn and Rising, reported to plaintiff that the credit of said defendants was good.

"That defendants Lynn and Rising did not in fact authorize the incurring of charges in excess of aforesaid fund, or against their general credit; that nevertheless said defendants, by establishing said fund, and directing purchases to be made against same, invested their special agents Donaldson (otherwise their sub-agent) and Mires with the apparent authority to buy upon the credit of said defendants; that said appearance was reinforced by the report of the Bank; that plaintiff, without negligence, could properly rely, and did in fact rely, upon said appearance in extending credit to Crescent Gold Dredging Company; that aforesaid appearance was dispelled on October 31, 1949, by a telephone call from the Bank; that in October, 1949 and prior to October 31, 1949, plaintiff had sold and delivered to Crescent Gold Dredging Company merchandise of the reasonable value of $859.12."

Judgment was entered against defendants Mires and Garner for $898.60, and against defendants Lynn and Rising for $859.12, said judgment providing that liability for the lease is joint and several as among all defendants but not cumulative.

This appeal is by defendants Lynn and Rising. Defendants Mires and Garner have not appealed.

The principal contention of appellants is that the judgment is not supported by the evidence. We have read the record carefully and bearing in mind the rule that when a judgment is attacked as being unsupported by the evidence the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court, we are satisfied that the record amply supports the judgment.

It appears from the record that defendants Roy Mires and Joseph H. Garner owned and operated a dredge on Coffee Creek, in Trinity County. Appellants, Lynn and Rising, became interested and on October 18, 1949, took an option on the dredge for 45 days of operation but not to exceed 60 consecutive days. The option provided that Lynn and Rising would pay to or for the account of Mires and Garner $12,500 during the option period and could, at their option, pay such other sum or sums as they should desire.

Mires testified that appellants arranged for W. G. Donaldson to observe the operations and do other things. Mires, with the consent of appellants, employed one Thomas to manage dredge operations. Donaldson asked Lynn about opening or establishing credit and Lynn referred Donaldson and anyone inquiring to Wells Fargo Bank in San Francisco. Lynn told Donaldson to get whatever he needed. The dredge needed considerable repair and was idle when Lynn and Rising came in. Lynn authorized F. T. Andrews, an accountant, to draw checks on the $12,500 which appellants deposited in Wells Fargo Bank for operating expenses. Both appellants had visited the dredge. Appellants authorized Mires to procure parts for the dredge and to repair machinery and told him to get a new cable, the costs to be paid out of the $12,500 fund.

Appellant Rising testified that he gave the name of Crescent Gold Dredging Company; that Andrews signed the checks; that he twice told Donaldson to get equipment; that bills were sent to Andrews; that he told Mires to get a refrigerator because he had had trouble keeping meat for the workmen; and

that the $12,500 fund was finally exhausted for labor and material that Mires, Donaldson and Thomas ordered.

E. P. Thomas testified that: He was engaged by Crescent Gold Dredging Company, hired by Mires, and was superintendent and worked in close touch with Donaldson; he was to repair and then operate the dredge; he purchased equipment and parts from respondent; all merchandise purchased from respondent was used on the dredge or in connection with its operations; he and Donaldson did the ordering; on one occasion Rising told Thomas to go to Redding and hire men for the dredge; he discussed with Rising straightening out the bow gantry on the dredge; Rising told him to refer doubtful creditors to Wells Fargo Bank as to appellants' credit; both Lynn and Rising gave orders or made suggestions as to operations.

Charles S. Wheaton, plaintiff's manager, testified that all invoices were made out to Crescent Gold Dredging Company.

E. E. Gerlinger, secretary-treasurer of plaintiff, testified that Donaldson told him he represented appellants; that he received one check from Crescent Gold Dredging Company which was signed by Andrews; that Donaldson told him to charge the purchases to that company; and that he talked with Lynn on the telephone after charges were made.

Appellant Wallace R. Lynn testified that: He and Rising put up the $12,500 in Wells Fargo Bank; Andrews was to draw checks for bills authorized by Mires; he procured Donaldson through the engineering firm of Gould and Company in San Francisco and paid Gould for Donaldson's services; he had heard of Thomas through Mires; Donaldson told him Mires and Garner had no credit for food for the men and Lynn gave him $300 in cash for food; he did tell the men reference could be made to Wells Fargo Bank for appellants' credit; the $12,500 put in the fund was paid out to creditors for labor and bills that were approved by Mires.

As this court said in *Gaine* v. *Austin,* 58 Cal.App.2d 250, at page 261 [136 P.2d 584]:

"An agent's authority may be proved by circumstantial evidence (*MacDonnell* v. *California Lands, Inc.,* 15 Cal.2d 344, 347 [101 P.2d 479]; *Sweet* v. *Watson's Nursery,* 33 Cal. App.2d 699, 704 [92 P.2d 812]; *Smith* v. *Schuttpelz,* 1 Cal. 2d 158, 161 [33 P.2d 836]); and it may likewise be implied from circumstances (*Robinson* v. *American Fish etc. Co.,* 17 Cal.App. 212, 217-219 [119 P. 388]; *Anglo-California Bank* v. *Cerf,* 147 Cal. 393, 399 [81 P. 1081]).

"As to the ostensible agency of Torp, section 2300 of the Civil Code provides that 'An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him'; and under section 2317, 'Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.'"

■ And in *Ford* v. *Lou Kum Shu*, 26 Cal.App. 203, this court said at page 208 [146 P. 199]:

"While it is a well-settled rule that agency cannot be established by the extra-judicial statements or declarations *in pais* of one pretending to act as agent and that such statements or declarations are incompetent and, therefore, inadmissible as in proof of agency, it is equally well established that the fact of agency, when it rests in parol, may be established on the trial by the testimony of the agent himself. In other words, 'the testimony of an agent sworn as a witness in a case, when the question of his agency is involved, is competent to establish it and its extent and nature.' [Numerous cases cited.]

"And 'it cannot be doubted that where the authority of an agent is unwritten, and express oral authority is not satisfactorily shown, such authority may be implied from acts and circumstances shown.' [Cases cited.]" See, also, *Dunlap* v. *Dean*, 109 Cal.App. 300 [292 P. 991].

■ While it is true, as stated in section 2334 of the Civil Code that "A principal is bound by acts of his agent, under a merely ostensible agency authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof," we are satisfied that under the evidence the court was fully justified in finding, as it did find, that appellants invested their agents Donaldson and Mires with apparent authority to buy upon the credit of said appellants and respondent without negligence could properly rely, and did in fact rely, upon said appearance in extending credit to Crescent Gold Dredging Company.

■ Appellants also contend that the court erred in admitting in evidence over appellants' objection a letter written by Wells Fargo Bank to respondent. The record shows that appellants had told Thomas to refer creditors to the bank as to appellants' credit and the letter from the bank was in response to respondent's inquiry. There was no error in its admission,

and, in any event, upon the record here no possible prejudice could have resulted to appellants by reason of its being admitted in evidence.

No other points raised require discussion.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.

A petition for a rehearing was denied December 27, 1951, and appellants' petition for a hearing by the Supreme Court was denied February 7, 1952.