438 P.2d 438

**BUD ANTLE, INC., a corporation, Appellant,**

v.

**Farris M. GREGORY, Appellee.**

**No. I CA–CIV 491.**

Court of Appeals of Arizona.

March 6, 1968.

Rehearing Denied April 12, 1968.

Westover, Keddie & Choules, by Tom C. Cole, Yuma, for appellant.

Brandt & Baker, by Ralph F. Brandt, Yuma, for appellee.

DONOFRIO, Judge.

This is an appeal by the defendant, Bud Antle, Inc., a corporation, from a judgment in the sum of $8,699.60 rendered by

the trial court without a jury in favor of the plaintiff, Farris M. Gregory, in an action brought for the breach of an alleged oral contract between the parties.

█ At the outset it is to be noted that the trial court made no findings of fact or conclusions of law, and none were requested, so we must assume the lower court made all necessary findings of fact essential to support the judgment. Rosen v. Hadden, 81 Ariz. 194, 303 P.2d 267 (1956); Harmon v. Hanson's Pump & Machine Works, Inc., 4 Ariz.App. 107, 417 P.2d 741 (1966).

Although this action concerns a contract for the hauling of culls at the operation in Los Banos, California, it is necessary to go into the background of the Yuma operation where the contract originated. The defendant corporation was engaged in produce packing in the Yuma area and plaintiff was desirous of contracting to haul the culls away from defendant's cantaloupe packing shed. Culls are cantaloupes which, due mainly to their size, shape and degree of ripeness, are unfit for shipment in interstate commerce. For that reason the culls had to be hauled away from defendant's packing shed. Plaintiff contacted Al St. Claire who he understood was to be shed foreman of the packing operation. He talked to St. Claire concerning the cull hauling job before the operation started. St. Claire said he would have to see about it, indicating he would check with Bob Antle before making a decision. Plaintiff Gregory was later informed he could have the job, but no price was agreed upon until the Yuma operation was more than halfway completed. Mr. Gregory spoke to Antle about the price and was informed that it was up to St. Claire. Plaintiff and St. Claire later arrived at the price of $8.00 per load of culls hauled from the packing shed.

Before the Yuma job was completed plaintiff spoke with St. Claire about getting the hauling job for the Los Banos, California operation. St. Claire said that if he (St. Claire) was foreman of the Los Banos operation, Gregory could have the hauling contract. St. Claire and Gregory had various conversations concerning the Los Banos operation. It appears from the transcript that either near the end of the Yuma operation or the beginning of the Los Banos operation, while St. Claire was still foreman of the packing sheds, an agreement was entered into calling for Gregory to receive five cents per crate of cantaloupes packed out by the packing shed. This was established by St. Claire's testimony of his conversation with plaintiff, a portion of which is as follows:

"Q Tell us what you said to him and he said to you about the cull haul.

"A Basically we was going to start about that time, and asked me if the nickel still applied, and I said yes, and that was the basic part of the conversation.

"Q When did you tell him it would start?

"A I told him probably the following Monday, a week, if that was on Sunday, it would have been a week from the next day.

"Q And he asked you if the nickel still applied?

"A Right.

"Q And what did you answer?

"A I said yes.

"Q What is the meaning of the term if the nickel still applied, what did that mean to you, if there is a meaning?

"A Well, the deal had already been set up.

"Q Oh, you already had a deal with him?

"A Yes.

"Q And what was that deal?

"A The deal was set up for the nickel.

"Q A nickel per what?

"A Crate.

"Q Per packed out crate?

"A Right.

"Q So this is merely confirming a deal you'd already made?

"A Right.

"Q And when did you make the deal before then?

"A Two or three days before we closed up here, before we closed up our shed operation."

This indicates the agreement was made just prior to the beginning of the Los Banos operation while St. Claire was foreman there, supervising setting up the packing shed.

■ We are of the opinion the evidence supports the finding that St. Claire and Gregory did reach an agreement while St. Claire was still acting as foreman, i. e., that Gregory would haul the culls for five cents per packed out crate. Further evidence on this point is that when plaintiff appeared at the shed to carry out the contract he was greeted by the then shed foreman who made an acknowledgment that the contract had been entered into. The testimony of Mr. Gregory concerning his arrival is as follows:

"Q And you testified that Mr. Stein was the shed foreman when you arrived, is that correct?

"A That's right.

"Q Were you surprised to see that Al wasn't there?

"A Yes, sir.

"Q Did you ask around as to what happened to Al?

"A No. I heard someone say he was—what did they say—lettuce deal or something.

"Q Did they mention anything about being down in Texas or something of the sort?

"A No, sir.

"Q Did you report in to Mr. Stein?

"A Well, when I backed my truck in there at the shed, Mr. Stein came to me, and he said, said I heard— 'I hear you got the contract for the cull hauling.' I said, 'Yes, as far as I know I have.' He said, 'Why, you take this end and I'll take the other end.' I said, 'Okay,' and we went to work."

Plaintiff then worked for about 60 days hauling culls from the shed. At the end of that time he submitted a bill for the amount claimed.

■■ Defendant claims that even if St. Claire made such an agreement, it has no force since he lacked authority to make the agreement. Generally, the nature and extent of the authority of an agent and whether he acted within the scope of his authority is for the trier of fact.

"Usually and ordinarily the nature and extent of the authority of an agent and whether the act or contract in controversy was within the scope of his authority are, under the evidence, questions of fact to be determined by the jury or other trier of facts, and the court may and should decline to take such questions from the jury, or from itself as a trier of facts, by granting a nonsuit, directing a verdict, or otherwise. The foregoing rule as stated above is applicable to questions of actual, real, express, implied, secret, or apparent or ostensible authority. It is also true as to questions of authority to collect, receive, or accept payment, to make a * * * contract of employment * * *." 3 C.J.S. Agency § 330.

In this instance, as trier of fact, it is for the court to determine whether St. Claire had authority to make the contract. If this determination is reasonably supported by the evidence it is not for this court to substitute its judgment for that of the trial court. Rosen v. Hadden, supra; Tucson Rapid Transit Co. v. Rubiaz, 21 Ariz. 221, 187 P. 568 (1920). Plaintiff advances three types of agency. He urges that St. Claire had express, implied and apparent authority to enter into the contract. We feel that it is necessary to examine only the last contention. In O. S. Stapley Company v. Logan, 6 Ariz.App. 269, 431 P.2d 910

(1967), we cited the following with approval from 3 Am.Jur.2d, Agency § 73:

" * * * Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. In effect, therefore, an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely upon such appearance, his real authority, and it may apply to a single transaction, or to a series of transactions."

The Supreme Court in Litchfield v. Green, 43 Ariz. 509, 33 P.2d 290 (1934), laid down the requirements of an act of agency. Quoting from Mechem on Agency, § 289:

" * * * A person can no more make himself agent by his own acts only than he can by his own declarations or statements. If his acts can be connected with the principal in some way, as by showing that *the principal knew of them and assented to them,* a different result ensues; and, where the acts are of such a public or intimate nature, so notorious, or so long continued as reasonably to justify the inference that the principal must have known of them, and would not have permitted them to continue if they were unauthorized, evidence of them is admissible as against the alleged principal." (Emphasis ours) 43 Ariz. at 511, 33 P.2d at 291.

■ The facts of the instant case show that Antle knew that plaintiff had dealt with St. Claire in the Yuma operation and in fact directed plaintiff to deal with St. Claire in connection with the price agreement. Therefore it was not an initial dealing with the agent as such. This past experience of Gregory has an effect on his duty to check into the authority of St. Claire in subsequent dealings with the same corporation involving a similar contract of employment. This duty to ascertain the scope of an agent's authority may be qualified by past experience:

" * * * The duty of inquiry is one of especial force where the particular transaction involved constitutes the initial dealing with the agent as such, while, conversely, if the third person has in prior transactions dealt through the agent, the presumption of a continuance of the authority unaltered, discussed in § 316, is operative and entitles him in the absence of knowledge or notice to the contrary to rely on the continuing power of the agent, without fresh investigation. * *" 2 C.J.S. Agency § 93 at page 1199.

In Lux Art Van Service, Inc. v. Pollard, 344 F.2d 883 (1965), an Arizona case decided by the United States Court of Appeals, Ninth Circuit, it was stated that, " * * To apply the rule of apparent authority, there must therefore be some basis for what may be loosely termed an estoppel against the principal. And this 'estoppel' depends upon manifestations by the principal to the third party and not to the agent."

In the instant case we find sufficient manifestations by the principal Antle that Gregory could rely on St. Claire's authority. Antle had told Gregory to deal with St. Claire in earlier similar dealings and had left the supervision of cull hauling in St. Claire's hands. Furthermore, Antle had authorized St. Claire to set up the Los Banos operation which would reasonably entail hiring someone to haul culls.

■ Defendant corporation contends that the contract was made in California and therefore must be enforced subject to the laws of California. However, in his testimony St. Claire unequivocally states that the conversation in California confirmed an agreement already settled while the parties were still in Arizona. His testimony is as follows:

"Q Uh-huh. Had you then come to an agreement that he would be paid on the basis of five cents per crate?

"A During the conversation—

"Q In Yuma.

"A —here at Yuma, yes, is where it was set up.

"Q And the conversation in Los Banos while you were still—while you were shed foreman up there merely confirmed the previous arrangement?

"A Right.

"Q At that time you were still setting up the shed?

"A Right."

However, even if California law applied, we fail to see that any different result would ensue. California recognizes apparent or ostensible authority as does Arizona, California Corp.Code § 803(c), and allows circumstantial evidence to show authority of an agent. Gerlinger Foundry & Mach. Works v. Crescent Gold Dredging Co., 108 Cal.App.2d 185, 238 P.2d 608 (1951). We believe a California court would find that under the circumstances St. Claire had the apparent authority to bind defendant corporation to a cull hauling contract with plaintiff.

Judgment of the Superior Court affirmed.

CAMERON, C. J., and STEVENS, J., concur.