465 P.2d 386

James E. GARDNER, Appellant,

v.

ROYAL DEVELOPMENT COMPANY, an Arizona corporation, Kenneth H. Campbell and Elsa Lee Campbell, his wife, Appellees.

No. 1 CA–CIV 817.

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 19, 1970.

Rehearing Denied March 26, 1970.

Review Denied April 14, 1970.

E. Gene Wade, Mesa, for appellant.

Kenneth H. Campbell, in pro per.

EUBANK, Presiding Judge.

James E. Gardner, plaintiff and appellant, who does business as the Mesa Lumber and Supply Company, filed an action based upon an open account against the Royal Development Company, an Arizona corporation, and against Kenneth H. Campbell and his wife Elsa Lee, defendants and principal stockholders of Royal Development Company, appellees herein, claiming $5,787.73, together with interest, due him for the sale of lumber and building supplies used in the construction of homes on lots located within the Scott Place subdivision in Maricopa County. Plaintiff's amended complaint alleges that the individual defendants should be held personally liable for the sums due plaintiff for the reasons that they owned and controlled the Royal Development Company, that they had grossly under-capitalized the corporation, and that they had so intermingled their personal affairs with the corporation's affairs that the corporation had no existence separate and apart from the defendants. Royal Development Company, which was defunct by the time that the complaint was filed, appeared but did not answer and a default judgment was eventually entered against it after the trial and as a part of the final judgment. The defendants Campbell answered denying the allegations of the amended complaint. The matter was heard by the court, without a jury, and judgment was entered in favor of the defendants Campbell. Neither party requested the court to make findings of fact and conclusions of law, consequently none were filed by the trial court. The plaintiff appeals from this judgment.

Plaintiff's first question on appeal deals with the sum awarded him as a default judgment against Royal Development Company. The trial court's judgment awarded him, " * * * the sum of $2,266.42, plus his costs of Court herein expended in the sum of $ (blank) ." He contends that this is in error for the reason that the complaint, the amended complaint, the answer of the Campbells, and all of the evidence introduced at the trial, both oral and written, only supports a judgment in the sum of $5,787.73, together with interest at the rate of 6% per annum from September 18, 1963.

We have reviewed the record and we agree with the plaintiff that there is no evidence to support the $2,266.42 judgment figure, and that all of the evidence supports a default judgment against Royal Development Company in the sum of $5,787.73, together with interest at the rate of 6% per annum from September 18, 1963, until paid.

Plaintiff next contends that the trial court erred in denying his motion that all of his Requests for Admissions be deemed admitted. He argues that this is required under the authority of Rule 36(a), Rules of Civil Procedure, 16 A.R.S., because defendants' response was not signed by them but by their attorney and, in addition, was not a "sworn statement" as required by the rule.

The record shows that plaintiff made his motion that the Requests for Admissions be deemed admitted at the outset of the trial and that the court denied it as untimely. The following review of the record confirms the trial court's ruling that the motion was untimely.

Plaintiff filed his Motion to Set and Certificate of Readiness with the trial court on May 5, 1966, certifying that: "2. He has completed all procedures intended to be undertaken prior to trial under Rules 26 to 37 of the Rules of Civil Procedure." Thereafter, with no objection from the defendants and without the permission of the court, depositions were taken. On March 8, 1967, the matter was set for pretrial conference on June 7, 1967. Rule V(f),

Uniform Rules of Practice, 17 A.R.S., provides that no additional discovery under Rules 26 to 37, Rules of Civil Procedure, may be commenced either five days before the pretrial conference or thereafter, except for, " * * * good cause shown * * *." Both parties filed the required pretrial memorandum. In plaintiff's memorandum he stated, "Counsel have agreed, however, to permit some additional pretrial discovery by continuing the deposition of defendant KENNETH CAMPBELL and permitting deposition of plaintiff." The trial court then entered its minute order, dated June 7, 1967, setting the matter for trial without a jury, fifteen days later on June 22. The order further provided, " * * * that either party may make discovery up to the time of the trial." Plaintiff, apparently reading "discovery" in its broadest connotation as permitting discovery under any of the Rules 26 to 37, Rules of Civil Procedure, 16 A.R.S., on June 10th filed extensive Requests for Admissions under Rule 36, Rules of Civil Procedure, 16 A.R.S., without requesting the permission of the trial court as required by Rule V(f), Uniform Rules of Practice, 17 A.R.S. The unverified response to the Requests for Admissions was filed with the court on June 20, two days before the trial date, and the cause rode the trial calendar, was vacated, and then finally tried on August 8, 1967, when the plaintiff's motion that all of his Requests be admitted was made.

Under the foregoing facts, we think it is clear that the plaintiff had no right to file his Requests for Admissions on June 10, without first obtaining the consent of the trial court for good cause shown, since the pretrial memorandum only referred to depositions. Consequently he cannot now be heard to object to the infirmities contained in the response. We agree with the trial court that the motion was untimely in that he did not comply with the Uniform Rules of Practice. See Dykeman v. Ashton, 8 Ariz.App. 327, 329, 446 P.2d 26 (1968).

The third question raised by the plaintiff deals with the sufficiency of the evidence. He contends that the defendants did not pay the full stock subscription price of $45,000.00 for their 4,500 shares of stock in Royal Development Company and that consequently, as a creditor, he may enforce his claim against the defendants.

█ As was pointed out at the beginning of this opinion, neither party requested the trial court to make findings of fact and conclusions of law. Consequently, for the purposes of reviewing the evidence, we must assume that the trial court made all of the findings of fact necessary to support the court's judgment. Rosen v. Hadden, 81 Ariz. 194, 303 P.2d 267 (1956); Bud Antle, Inc. v. Gregory, 7 Ariz.App. 291, 438 P.2d 438 (1968).

One of the problems facing plaintiff at the trial was to prove that the subdivision lots given the Royal Development Company by the defendants in exchange for 4,500 shares of stock worth $45,000.00 were, in fact, not worth that sum of money. The cross-examination of defendant Kenneth H. Campbell, showed:

* * * * * *

"Q [Plaintiff's Attorney] Mr. Campbell, in your opinion what was the value of the various individual lots that you agreed to transfer to Royal Development Company in exchange for this stock [4,500 shares]?

"A [Defendant-Mr. Campbell] I don't remember the various individual lots, how much each one of them was worth. I owed on some of them. Some of them I didn't owe on them. And so forth, but 25 lots I believe were worth $45,000."

* * * * * *

Later, the defendant testified:

* * * * * *

"Q To explain the contract somewhat, Mr. Campbell, in addition to the lots that you have transferred to this corporation, how much money did you put in from the time of its inception to the time the corporation finally went down and by

way of loan or how much did you put in?

\* \* \* \* \* \*

"[A] It seems to me I put in $50,000 when the creditors (sic) CPA went through the books. It was in excess of $32,000, between $32,000 and $33,000 actual cash besides the lots."

\* \* \* \* \* \*

Plaintiff attempted to counter defendant's testimony by introducing extensive documentary evidence which in fact raised a question as to the market value of the traded lots. But none of this evidence directly went to the issue of the fair market value of the lots on the day that they were exchanged for the stock. Finally, as his last witness, plaintiff called a real estate appraiser as an expert witness to testify on the issue of lot values. This witness was not permitted to give the court his opinion of the fair market value of the 25 lots when it appeared that his opinion was not based upon a study of comparable sales. This failure to contradict the testimony of the defendant leaves his opinion as the only evidence of the value of the 25 lots in the record.

The evidence supports the judgment of the trial court, and under the authorities cited heretofore, Rosen and Bud Antle, Inc., supra, we must presume that the trial court found as a fact that the defendants paid the Royal Development Company $45,000 for 4,500 shares of stock.

Plaintiff's last question deals again with the sufficiency of the evidence. He argues that the defendants are the alter ego of Royal Development Company and the observance of the corporation form in this case would sanction fraud or promote injustice. He cites Employer's Liability Assurance Corp. v. Lunt, 82 Ariz. 320, 313 P.2d 393 (1957) as authority for the proposition that the corporate fiction will be disregarded upon the concurrence of two circumstances: First, when the corporation is, in fact, the alter ego of one or a few individuals, and Second, when the observance of the corporate form would

sanction a fraud or promote injustice. (See 82 Ariz. page 323, 313 P.2d 393). In Lunt the Arizona Supreme Court was asked to review the sufficiency of the evidence that resulted in holding the principal officers and stockholders personally liable for a corporation debt on the basis that they were the alter ego of the corporation. The court reviewed the evidence and said that the trial court could have concluded from the facts that at the time of the purchase of the onion crop that the corporation was insolvent and that this fact was known to the principal officers and stockholders, who did not intend to pay for the merchandise at the time of the purchase. The court summarized this type of fraud in these words:

"The gist of the fraud here complained of is not in the breach of the agreement to perform, but in the implied representation of an existing intent to perform where such intent is, in fact, nonexistent, 23 Am.Jur. 887. The intent not to perform can be inferred from the fact that having resold the onions at a profit within a few days and having the means available to pay this debt, no attempt was made to apply the proceeds to the extinguishment thereof. The record does not reflect any reason for the Barrs to believe that the \* \* \* [corporation] could be expected to pay for these onions except out of the funds acquired by their resale." (82 Ariz. at 325, 313 P.2d at 396).

Fraud is never presumed and cannot be found on a mere suspicion as a possibility thereof; Rice v. Tissaw, 57 Ariz. 230, 112 P.2d 866 (1941); Smith v. Pinner, 68 Ariz. 115, 201 P.2d 741 (1948); Kosak v. Mabb, 10 Ariz.App. 432, 459 P.2d 520 (1969), and the plaintiff's burden of proof is by clear and convincing evidence. Higgins v. Kittleson, 1 Ariz.App. 244, 401 P.2d 412 (1965); Kosak v. Mabb, supra.

It is our opinion that the plaintiff failed to carry his burden of proof in this regard. In the Lunt case, the intent question was all important—the principal offi-

cers and stockholders knew the corporation was insolvent and intended not to pay for the onion crop when it was purchased. In the instant case there is no evidence in the record to support this intent feature of the alter ego theory. Plaintiff testified that he dealt with the corporation and looked to it for payment. Further, plaintiff participated in the liquidation of the corporation's assets. At no time did he testify that he was defrauded by anyone. Plaintiff cites no testimony by the defendant or any other witness relating to this wrongful intent aspect and we can find none. As we pointed out previously, where findings were not requested of the trial court we must assume that the court made all of the necessary findings to support the judgment, Rosen and Bud Antle, Inc., supra. We assume therefore that the trial court found that the individual defendants did not intend personally to pay for the lumber purchased by the sale of houses and lots and that no reliance was placed thereon by the plaintiff in extending credit to the corporation. Also, that the defendants did intend that the corporation would pay.

The case is remanded to the trial court with directions to correct the plaintiff's default judgment against Royal Development Company, as set out in this opinion; in all other respects the judgment is affirmed.

HAIRE and JACOBSON, JJ., concur.