476 P.2d 521

**ALLIED CONTRACT BUYERS, a corporation, and Gibraltar Savings and Loan Association, a corporation, Appellants,**

**v.**

**LUCERO CONTRACTING COMPANY, a co-partnership, Appellee.**

No. I CA–CIV 1200.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 12, 1970.

Rehearing Denied Dec. 9, 1970.

Review Denied Feb. 2, 1971.

Renaud, Cook, Miller & Cordova, Phoenix, by Joseph B. Miller, Phoenix, for appellants.

Robert P. Davidson, Scottsdale, for appellee.

JACOBSON, Judge.

This appeal arises out of the same civil action which is the subject matter of our opinion in Suiter and Son Construction Co. v. Allied Contract Buyers, 13 Ariz.App. 318, 476 P.2d 524, filed this date.

A complete party designation and factual presentation is set forth in that opinion and shall not be repeated here, except insofar as necessary for continuity and readability.

Appellant, GIBRALTAR SAVINGS & LOAN ASSOCIATION, appeals from that portion of the judgment of the Superior Court of Maricopa County determining that the mechanic's lien of appellee,

LUCERO CONTRACTING CO., a co-partnership, is superior and prior in time to the mortgage lien of Gibraltar.

The basic issue on this appeal is whether or not the trial court's determination that Lucero dealt with Allied Contract Buyers as a sub-contractor, is supported by the evidence.

As set forth in Suiter & Sons Constr. Co. v. Allied Contract Buyers, *supra*, the real property in question was transferred from the corporate entity, Allied Contract Buyers to its sole stockholders, Ellington & Perry, on February 25, 1964. On March 24, 1964, construction was commenced on four duplexes on the property. On May 22, 1964, pursuant to requests, Lucero submitted a bid to Allied for installation of water mains on the subject property. Ellington & Perry, on May 26, 1964, reconveyed the property to Allied and as of 2:55 p. m. on that date the first of the Gibraltar mortgages was placed of record.

Lucero did not commence work on the premises until June 30, 1964, at which time all the Gibraltar mortgages were of record.

The only factual dispute of the parties arises out of when Lucero's bid was accepted, and the legal effect of that acceptance. Two letters were introduced to substantiate the positions of each party. The first was a letter dated May 27, 1964, from Allied to Lucero, confirming an oral conversation held on May 26, 1964, advising Lucero that its bid had been accepted. The second letter was one dated June 4, 1964, from Allied to Lucero, which enclosed a signed copy of a letter dated May 29, 1964, from Lucero to Allied confirming the previous bid award. Gibraltar argues that Allied did not accept the bid until May 29, 1964, by signing the letter of that date from Lucero. At that time title to the subject property was in Allied. Therefore, Gibraltar contends that Lucero dealt with Allied, the owner of the property and is not a general contractor, and that the doctrine of relation back in time for priority purposes normally available to a subcontractor is therefore not available to Lucero because

Lucero was an "original contractor." Gibraltar's argument continues that since Lucero did not actually begin construction until June 30, 1964, after all the Gibraltar mortgages were of record, Lucero's mechanic's lien is subordinate to the lien of the Gibraltar mortgages.

We held in Suiter & Sons Constr. Co. v. Allied Contract Buyers, *supra*, that the crucial date for determining whether a particular lien claimant is an "original contractor," or a subcontractor in determining priority between lien claimants, is the date that the particular lien claimant's contract came into existence.

In this case it is clear that at the time Allied requested this bid for the installation of water mains, it was not the record title holder of the property and under our decision in Suiter & Sons Constr. Co. v. Allied Contract Buyers, *supra*, was an original contractor. Moreover, there is no question that at least by 2:55 p. m. on May 26, 1964, Allied became the record owner of the subject property. The question is, what was Allied's status on the date it accepted Lucero's bid and what was that date?

Gibraltar correctly points out that Lucero in its claim of lien, its pleadings before the court and in answer to interrogatories, maintains that its contract with Allied came into existence on May 29, 1964. On this date the property had been transferred to Allied and therefore Lucero would have dealt with Allied as the owner of the property and would be an original contractor. Normally, a party is bound by its pleadings and may not introduce evidence in contradiction of an expressed allegation of fact set forth in its pleadings. Armer v. Armer, 105 Ariz. 284, 463 P.2d 818 (1970). Applying this rule, Gibraltar must prevail. However, even if we do not apply this technical pleading rule Gibraltar still must prevail.

It is apparent from the letter of May 27, 1964, that Lucero's bid had been orally accepted by Allied on May 26, 1964. Since neither the request for bids in this matter nor the bid forms submitted by Lucero designated the manner in which bids could be accepted, an oral acceptance of the bid, communicated to the bid requester, is legally sufficient to establish a binding contract. 17 C.J.S. Contracts § 42, at 679 (1963). We could, therefore, hold that the date a valid binding contract existed between Allied and Lucero was May 26, 1964. This does not solve the problem for the May 26 date is, of course, the same date that Allied acquired title to the subject property which would change its status from that of an original contractor to that of an owner.

At this point it must be kept in mind that we are not dealing with the relationship between the owner-contractor and his subcontractor, for as between these two where Allied requested bids from Lucero in one capacity, that is, an original contractor, it will be presumed that Allied accepted the bid in the same capacity, in absence of proof that actual notice of Allied's change of status was conveyed to Lucero prior to acceptance of the bid. Bud Antle, Inc. v. Gregory, 7 Ariz.App. 291, 438 P.2d 438 (1968). However, such a presumption cannot be indulged in when the dispute is between lienholders, one of which (Gibraltar) had no knowledge of the existence or non-existence of the prior dealings between Allied and Lucero.

Gibraltar proved that on May 26, 1964, at 2:55 p. m., Allied became the owner of the property and its lien rights were established at that time. *See*, In re Mayer Central Building Corp., 275 F.Supp. 873 (D.Ariz.1967). Lucero then had the burden of proving that its lien had priority to the Gibraltar mortgage. *See* Harvey v. Aubrey, 53 Ariz. 210, 87 P.2d 482 (1939). This it failed to do. The record is completely silent as to what time of day Allied orally accepted Lucero's bid.

Upon this failure of evidence, there is no evidence to support the trial court's finding that Lucero was a subcontractor at the time its contract with Allied came into existence. On the contrary, based on the

**318**

pleadings, interrogatories and the evidence presented, only one conclusion can be drawn, that is, that at the time Lucero entered into its contract with Allied, Lucero had the legal status of an original contractor.

The judgment of the trial court insofar as it adjudicates the priorities of liens between Lucero and Gibraltar, is reversed and the matter is remanded with directions to find that the Gibraltar mortgage liens are prior in right to those of Lucero's mechanics' liens.

Judgment reversed.

EUBANK, P. J., and HAIRE, J., concur.