In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3208

MICHAEL BURKE,

*Plaintiff-Appellant,*

*v.*

401 N. WABASH VENTURE, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-CV-05330–**George M. Marovich**, *Judge.*

ARGUED NOVEMBER 26, 2012—DECIDED APRIL 10, 2013

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge*. Michael Burke signed a contract to purchase a condominium unit and two parking spaces in the Trump International Hotel & Tower in downtown Chicago for about $2.2 million. Burke made two earnest payments totaling 20% of the purchase price. When it came time to close, however, Burke refused to pay. He filed this lawsuit after the developer declined to refund his earnest money. Burke maintains

that the developer made a material change when it placed parking on the Trump Tower's sixth floor. But the documents he signed demonstrate that Burke was on notice that the use of the sixth floor for parking was always a possibility. Burke also argues on appeal that the agreement he signed was unenforceable from the start, but the agreement is not void for lack of mutuality as the developer had an obligation to act in good faith to convey the condominium to him. Nor is the contract unenforceable due to a penalty clause, because the contract did not give the developer the option to choose between actual or liquidated damages. For these reasons, we affirm the district court's dismissal of Burke's second amended complaint.

## I. BACKGROUND

On December 31, 2006, when the real estate market was still strong, Michael Burke, a citizen of Ireland, signed a contract with 401 N. Wabash Venture, LLC, the developer for the Trump International Hotel & Tower in Chicago, to buy a condominium unit and two parking spaces in the Trump Tower. The total purchase price was $2,282,130, which included $150,000 for the parking spaces. Burke deposited $456,426 in earnest money, an amount equal to 20% of the purchase price.

Before he signed the purchase agreement, Burke received a copy of the initial Trump Tower Property Report that was dated September 24, 2003. The Property Report stated that the development would contain an "undetermined number of unit parking spaces within

the above-ground facilities that the Developer currently intends will be located on some floors three (3) through twelve (12) . . . ." The developer later set a closing date of August 7, 2008. On August 6, the developer gave Burke a copy of the condominium's Declaration and Special Amendment to the Covenants, Conditions, and Restrictions (CCR's). The Special Amendment stated that the sixth floor would be used for parking spaces.

Burke did not close on the unit, asserting that the use of the sixth floor for parking lowered the value of his investment and increased the amount of maintenance fees he would be required to pay. Burke sought to rescind the contract. He asked the developer to refund his earnest money, but it refused. Burke then filed this lawsuit, styling it as a class action.

The developer moved to dismiss Burke's suit for failure to state a claim upon which relief could be granted. After the district court dismissed Burke's original complaint, Burke amended his complaint twice. The second amended complaint contained sixteen counts. The district court struck five counts, it granted the developer's motion to dismiss for failure to state a claim on nine counts, and Burke voluntarily dismissed two counts. In light of its conclusion that the complaint failed to state any claims for relief, the court did not reach the issue of class certification. Burke appeals.

## II. ANALYSIS

We review dismissals under Federal Rule of Civil Procedure 12(b)(6) de novo. *Citadel Group Ltd. v. Wash. Reg'l*

*Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). In doing so here, we construe the amended complaint in the light most favorable to Burke, accept Burke's well-pleaded facts as true, and draw all reasonable inferences in Burke's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 979 (7th Cir. 2012). To survive a motion to dismiss, the complaint must contain enough facts to state a claim for relief that is plausible on its face. *Citadel Group*, 692 F.3d at 591.

### A. No Material Change

Burke argues that after he and the developer signed the purchase agreement, the developer made a material change to the Property Report, and that it did so without the approval of 75% of the Trump Tower owners. So he maintains that he is entitled to a remedy under section 22 of the Illinois Condominium Property Act, 765 Ill. Comp. Stat. 606/22, or under a common law breach of contract theory.

The Illinois Condominium Property Act requires that, with respect to the initial sale of any condominium unit, the seller must make certain disclosures and provide copies of certain documents to the prospective purchaser including the declaration, bylaws of the association, the projected operating budget for the condominium unit, and the unit's floor plan. 765 Ill. Comp. Stat. 605/22(a)-(e). The parties use the term "Property Report" to refer collectively to the documents

that the seller must disclose to the buyer in section 22, as do we.

In reviewing Burke's claim, we first note that the district court properly considered the Property Report in ruling on the motion to dismiss even though Burke had not attached the Property Report to his complaint. In general, a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). However, Federal Rule of Procedure 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." We have concluded that this rule includes a limited class of attachments to motions to dismiss pursuant to Rule 12(b)(6). *Rosenblum*, 299 F.3d at 661. "'[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)) (additional quotation omitted). These documents may be considered by a district court in ruling on the motion to dismiss without converting the motion into a motion for summary judgment. *Id.* The court "'is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.'" *Rosenblum*, 299 F.3d at 661 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil 2d*, § 1327 at 766 (1990)).

Here, Burke's complaint makes repeated reference to the Property Report, and the Property Report is central to his claims that the developer violated the Illinois Condominium Property Act and breached a contract. He alleges that the developer made a material change to the information in the Property Report, and that it did so without sufficient buyer approval. The Property Report is clearly central to these claims, and the district court was right to consider it.

In addition to requiring the disclosure of certain documents, section 22 of the Condominium Act also provides:

> All of the information required by this Section which is available at the time shall be furnished to the prospective buyer before execution of the contract for sale. Thereafter, no changes or amendments may be made in any of the items furnished to the prospective buyer which would materially affect the rights of the buyer or the value of the unit without obtaining the approval of at least 75% of the buyers then owning interest in the condominium. If all of the information is not available at the time of execution of the contract for sale, then the contract shall be voidable at option of the buyer at any time up until 5 days after the last item of required information is furnished to the prospective buyer, or until the closing of the sale, whichever is earlier. Failure on the part of the seller to make full disclosure as required by this Section shall entitle the buyer to rescind the contract

for sale at any time before the closing of the con-
tract and to receive a refund of all deposit
moneys paid with interest thereon at the rate
then in effect for interest on judgments.

765 Ill. Comp. Stat. 605/22.

Burke maintains that the developer made a change
or amendment to the information in the Property
Report that affected him without obtaining approval of
at least 75% of the buyers. The developer responds that
rescission for a violation of the disclosure obligation
is the only remedy provided to a buyer under section 22,
yet Burke does not allege that the developer failed to
make full disclosure about any matter required by
section 22. The parties do not point us to any Illinois
state court decision squarely answering whether the
Condominium Act contains a private right of action or
remedy when a buyer alleges that the developer made
a material change without 75% approval. *Cf. Luster v.
Jones*, 388 N.E.2d 1029, 1033 (Ill. App. Ct. 1979) (ruling
that rescission due to seller's failure to disclose is a
remedy for the prospective buyer only prior to closing,
not after); *Goldberg v. 401 N. Wabash Venture, LLC*, 2010
WL 1655089, at *6 (N.D. Ill. 2010) (concluding that
Illinois Condominium Act does not include an im-
plied private right of action for violation of section 22's
amendment provision).

We need not predict whether the Supreme Court of
Illinois would find that Burke has an available remedy
because there was no material change. *Cf. Allstate Ins.
Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)

(discussing obligation of federal court sitting in diversity to ascertain how state's highest court would decide). The only purported material change Burke asserts is the "addition" of parking on the sixth floor. The initial Trump Tower Property Report was issued in September 2003, and Burke received a copy of it before signing the purchase agreement. It states in relevant part:

> The Condominium will contain . . . an undetermined number of unit parking spaces within the above-ground parking facilities that the Developer currently intends will be located on some of floors three (3) through twelve (12) . . . .

Consistent with the Property Report, the purchase agreement Burke signed stated:

> In addition to the Condominium and the Hotel Condominium, the Building will likely include: . . . (B) a public parking garage area, currently anticipated to contain parking spaces located on floors LL2, LL3, and LL4 of the Building and some of floors three (3) through twelve (12) of the Building . . . .

So from the outset, it was clear from the documents Burke received that the number of parking spaces had yet to be determined and also that Wabash Venture planned to locate parking on "some of floors three (3) through twelve (12)." Burke was put on notice of the possibility that any of those floors could be used for parking. Clearly, floor six was a possibility for parking. Locating parking on the sixth floor was not a change or amendment from the disclosed plans that materially

affected his rights or his unit's value. Indeed, it was not a change at all. The parking space matter does not amount to material breach under either the Condominium Act or a common law breach of contract theory.

**B. Agreement Does Not Fail for Lack of Mutuality**

Burke also argues that the purchase agreement was faulty from the outset and that he is therefore entitled to rescission. For one, Burke argues that the purchase agreement is unenforceable for lack of mutuality. Because Burke breached the agreement, the developer maintains that under the contract it can keep the earnest money Burke deposited that is equal to 20% of the purchase price. Burke emphasizes that the purchase agreement states that if the developer had instead been the party that defaulted, the return of earnest money is Burke's sole remedy. (He does not mention the possibility of specific performance, nor does he seek it here.) Burke maintains that the developer's obligations under the contract are therefore merely illusory and that it could simply sell the unit to a new buyer willing to pay a higher price than the existing contract price with no harmful consequences.

"In its most elemental sense, the doctrine of mutuality of obligation means that unless both parties to a contract are bound by its terms, neither is bound." *Schwinder v. Austin Bank of Chi.*, 809 N.E.2d 180, 193 (Ill. App. Ct. 2004); *see also Kraftco Corp. v. Kolbus*, 274 N.E.2d 153, 155 (Ill. App. Ct. 1971). The idea of a strict mutuality requirement is, however, disfavored. *See, e.g., Carter v. SSC*

*Odin Operating Co.,* 976 N.E.2d 344, 351 (Ill. 2012); Restatement (Second) of Contracts § 79 cmts. a, f (1979). The Supreme Court of Illinois has explained:

> While consideration is essential to the validity of a contract, mutuality of obligation is not. Where there is no other consideration for a contract, the mutual promises of the parties constitute consideration, and these promises must be binding on both parties or the contract falls for want of consideration, but where there is any other consideration for the contract, mutuality of obligation is not essential.

*Carter*, 976 N.E.2d at 351 (quoting *Armstrong Paint & Varnish Works v. Cont'l Can Co.*, 133 N.E. 711, 714 (Ill. 1922)); *see also McInerney v. Charter Golf, Inc.*, 680 N.W.2d 1347, 1351-52 (Ill. 1997).

In Illinois, courts have imputed an implied promise of good faith and fair dealing in real estate purchase agreements. *Schwinder*, 809 N.E.2d at 194. As a result, Illinois courts have rejected arguments similar to the one Burke makes now. In *Borys v. Josada Builders, Inc.*, 441 N.E.2d 1263 (Ill. App. Ct. 1982), for example, the Illinois appellate court considered a dispute over the sale of condominium units. The contract provided that if the seller failed to deliver good title to the unit, the buyers' remedy was limited to a return of all funds paid or deposited. *Borys*, 441 N.E.2d at 1266. The buyers argued that because the seller could control the quality of the title and the seller's liability was limited to return of the deposit, the seller was free to perform or not

perform at will and that the contract therefore lacked mutuality. *Id.* In light of the implied promise of good faith and fair dealing, however, the court rejected the buyers' argument. *Id.* The court concluded that when the contract was construed, as it said it must be, as requiring the parties to act in good faith, the seller had an obligation to obtain the quality of title required under the contract to consummate the sale. *Id.* at 1267. Therefore, mutuality of obligation existed. *Id.*

More recently, in *Schwinder v. Austin Bank of Chicago*, 809 N.E.2d 180 (Ill. App. Ct. 2004), the Illinois appellate court analyzed a condominium purchase agreement that contained a provision similar to the one here. That contract provided that return of the earnest money to the purchaser was the purchaser's "sole exclusive remedy" in the event of the seller's default. 809 N.E.2d at 185. Although neither party contended that the clause was invalid, the court analyzed whether there was mutuality of obligation because of the buyer's claim that the seller had an unfettered right to terminate the purchase agreement. *Id.* at 194-95. The court stated that the duty of good faith and fair dealing was imposed on the provision of the contract granting the seller the right to terminate the contract, with the result that there were mutually binding obligations on both the buyer and seller. *Id.* at 195.

Under Illinois law, then, Burke's argument that the purchase agreement is unenforceable on the basis that the developer can "breach at will and all he has to do is give [Burke's] money back" has no merit. As in *Borys*

and *Schwinder*, Illinois law imputes the implied obligation of good faith and fair dealing into the developer's obligation to convey the condominium unit and parking spaces to Burke. And although Burke contends that applying the implied covenant of good faith "overrides" contract provisions, we have rejected that argument before. *See, e.g., L.A.P.D., Inc. v. Gen. Elec. Corp.*, 132 F.3d 402, 403-04 (7th Cir. 1997) (explaining that "good faith" in Illinois contract law is a gap-filling approach and is essentially used as construction aid). The developer had the obligation under the contract to convey the condominium unit and parking spaces to Burke. In light of the implied obligation of good faith and fair dealing, the agreement did not lack mutuality.

## C. Liquidated Damages Clause Enforceable

Burke's complaint also contains a count asserting he can rescind the agreement on the ground that it contains an unenforceable penalty clause. As an initial matter, Burke does not point to any case suggesting that the remedy for an unenforceable damages clause under Illinois law is rescission of the contract. *Cf. Grossinger Motorcorp, Inc. v. Am. Nat'l Bank and Trust*, 607 N.E.2d 1337, 1348 (Ill. App. Ct. 1992) ("In sum, we conclude that the liquidated damages provision is unenforceable and that consequently defendant is only allowed to recover actual damages resulting from the breach."); *see also Hamming v. Murphy*, 404 N.E.2d 1026, 1032 (Ill. App. Ct. 1980).

In any event, the clause is enforceable. Whether a provision constitutes a valid liquidated damages clause or an unenforceable penalty clause is a question of state law that we review de novo. *Energy Plus Consulting, LLC v. Ill. Fuel Co.,* LLC, 371 F.3d 907, 909 (7th Cir. 2004). Paragraph 12(a) of the purchase agreement provides, as it relates to damages:

> In the event of a default or breach of this Purchase Agreement by Purchaser, . . . Seller may terminate this Purchase Agreement and, as its sole and exclusive remedy upon termination, retain as liquidated damages . . . [the] Earnest Money deposit . . . and if Seller is otherwise entitled to the liquidated damages described above, Seller shall return to Purchaser amounts paid to seller . . . . In accordance with Section 1703(d) of the Interstate Land Sales Full Disclosure Act, if Seller is otherwise entitled to the liquidated damages described above, Seller shall return to Purchaser amounts paid to Seller . . . in excess of (x) 15% of the Purchase Price (excluding any interest paid under the Purchase Agreement) or (y) the amount of Seller's actual damages, whichever is greater.

In Illinois, a provision that allows a defendant the option to receive liquidated damages or seek actual damages is unenforceable as a penalty. *Karimi v. 401 N. Wabash Venture, LLC,* 952 N.E.2d 1278, 1287 (Ill. App. Ct. 2011) (citing *Grossinger,* 607 N.E.2d at 1347). Such a provision is unenforceable because it gives the defendants

a minimum recovery regardless of actual damages, yet also allows the defendants to disregard liquidated damages if the actual damages were greater than the specified amount. *Id.* That negates the purpose of liquidated damages, which is to provide parties with an agreed upon, predetermined damages amount when actual damages may be difficult to ascertain. *Id.*; *Hickox v. Bell*, 552 N.E.2d 1133, 1140-41 (Ill. App. Ct. 1990).

Here, the developer maintains that the clause does not give it the option to choose between liquidated and actual damages, and we agree. The plain language of the provision shows that the only "option" the developer has upon the buyer's breach is whether to terminate the agreement, as the clause states that the seller "may terminate" upon the buyer's default or breach. But there is no "may" in the provision as it relates to the type of damages.

Notably, the Illinois appellate court construed this same liquidated damages provision in response to another suit against the developer here and rejected the argument Burke makes now. *Karimi,* 952 N.E.2d at 1287. The court ruled that despite paragraph 12(a)'s reference to actual damages, it did not give the seller the option to seek them. *Id.* Rather, "[a]lthough a calculation of actual damages may be necessary to determine a liquidated damages amount, defendants can receive no more than the amount plaintiffs have deposited pursuant to the agreement, even if actual damages prove greater than the sum deposited." *Id.* The court also rejected the plaintiffs' argument that paragraph 12(a)

was a penalty because the developer sold the unit at issue for more than the price in the plaintiffs' purchase agreement, reasoning that under the terms of the agreement, it was irrelevant to the liquidated damages issue whether the unit was later resold. *Id.* We see no indication that the Supreme Court of Illinois would disagree with this reasoning.

## D. No Violation of Interstate Land Sales Full Disclosure Act

Burke also maintains he has stated claims for violations of the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1703(d). One of the Act's core purposes is " 'to prevent false and deceptive practices in the sale of . . . land by requiring developers to disclose information needed by potential buyers.' " *Bacolitsas v. 86th & 3rd Owner, LLC*, 702 F.3d 673, 680 (2d Cir. 2012) (quoting *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776, 778 (1976)); *see also Long v. Merrifield Town Center Ltd. P'ship*, 611 F.3d 240, 244 (4th Cir. 2010) ("ILSFDA is a remedial statute enacted to prevent interstate land fraud and to protect unsuspecting and ill-informed investors from buying undesirable land."). In instances where the statute applies (the developer does not argue that any of its exemptions apply here), section 1703(d)(3) permits revocation at the option of the purchaser for two years after the date the purchase agreement is signed if the agreement does not provide that

> if the purchaser . . . loses rights and interest in the
> lot as a result of a default or breach of the con-
> tract or agreement which occurs after the pur-
> chaser . . . has paid 15 per centum of the purchase
> price of the lot, excluding any interest owed under
> the contract or agreement, the seller . . . shall
> refund to such purchaser . . . any amount which
> remains after subtracting (A) 15 per centum of
> the purchase price of the lot, excluding any
> interest owed under the contract or agreement,
> or the amount of damages incurred by the seller . . .
> as a result of said breach, whichever is greater,
> from (B) the amount paid by the purchaser . . . . .

15 U.S.C. § 1703(d)(3).

Burke argues that the purchase agreement's state-
ment that the "Seller *may* terminate this Purchase Agree-
ment and, as its sole and exclusive remedy upon ter-
mination retain as liquidated damages . . ." fails to
comply with the ILSFDA's requirement that the pur-
chaser be notified that "if the purchaser . . . loses rights
and interest . . . the seller . . . *shall* refund to such
purchaser . . . any amount which remains after
subtracting . . . ." (emphases added). This argument is
meritless. The word "shall" in that part of the statute
refers to the requirement that the seller refund any
amount remaining after application of a liquidated dam-
ages formula, if an amount must be refunded. The agree-
ment's use of "may" comes in a different context alto-
gether, namely in giving the seller the choice of whether
to terminate the agreement or keep it in effect if the
purchaser defaults.

Burke also argues that even if the contract is enforceable and the developer is entitled to keep some of his earnest money as a result of his breach, the ILSFDA means that the developer may only keep an amount equal to 15% of the purchase price. Once again, we disagree. Section 1703(d)(3) does not create a maximum of 15% of the purchase price as the measure of liquidated damages upon a purchaser's breach. It explicitly states that the amount the seller is to refund is 15% of the purchase price, *or* the amount of damages incurred by the seller," whichever is greater, 15 U.S.C. § 1703(d)(3) (emphasis added), so the 15% figure in the ILSFDA is not a cap on damages.

### E.   No Breach of Contract in Retaining Earnest Money After Breach

Burke's complaint also asserts the developer's failure to return $114,106.50 of the earnest money he deposited, an amount equaling 5% of the purchase price, means that the developer breached paragraph 12(a) of the purchase agreement. Paragraph 12(a) provides in relevant part: "if Seller is otherwise entitled to the liquidated damages described above, Seller shall return to Purchaser amounts paid to Seller . . . in excess of (x) 15% of the Purchase Price (excluding any interest paid under the Purchase Agreement) or (y) the amount of Seller's actual damages, whichever is greater."

The district court dismissed this claim because Burke made no allegations that the developer's actual damages were not greater than 20% of the purchase price. Without

an allegation that the developer's actual damages were less than 20% of the purchase price, the complaint fails to state a claim upon which relief could be granted. Indeed, as the district court stated, it is widely understood that the value of the residential real estate market fell after December 2006, when Burke entered into the contract. We also note that the 20% figure is not so high as to be unenforceable on public policy grounds. In Illinois, "[c]ourts have considered earnest money representing up to 20% of the purchase price a reasonable sum as liquidated damages." *Karimi*, 952 N.E.2d at 1288. Burke received three opportunities to plead an actionable claim. We agree with the district court that he failed to plead a plausible claim for relief on this breach of contract claim or any of the claims he challenges on appeal.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.