NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

EDWARD G. MANS, *Plaintiff/Counterdefendant/Appellee*,

JEANNETTE MANS, *Counterdefendant/Appellee*,

*v.*

LAWSON PRODUCTS, INC., *Defendant/Counterclaimant/Appellant.*

No. 1 CA-CV 13-0422
FILED 12-09-2014

Appeal from the Superior Court in Maricopa County
No. CV2011-014264
The Honorable Douglas L. Rayes, Judge

**AFFIRMED**

COUNSEL

Osborn Maledon, Phoenix
By Thomas L. Hudson, John L. Blanchard and Sharad H. Desai
*Counsel for Plaintiff/Counterdefendants/Appellees*

Littler Mendelson PC, Phoenix
By J. Mark Ogden and Christie L. Kriegsfeld
*Counsel for Defendant/Counterclaimant/Appellant*

---

## MEMORANDUM DECISION

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

---

**G O U L D**, Judge:

**¶1**        Lawson Products Inc. ("Lawson") appeals from the trial court's judgment in favor of its former employee, Edward Mans.  For the reasons discussed below, we affirm.

## BACKGROUND

**¶2**        Lawson is a seller and distributor of industrial maintenance and repair products.  Mans was employed by Lawson as a regional manager.  In connection with his employment, he entered a Regional Manager Employment Agreement ("Employment Agreement") on January 1, 2001.

**¶3**        The Employment Agreement contained two restrictive covenants prohibiting Mans from (1) soliciting Lawson's agents/employees and (2) contacting Lawson's customers.  The restrictive covenants precluded Mans from competing with Lawson for "two (2) years following the effective date of termination . . . whether such termination is . . . for or without cause."   In the case of termination without cause, Mans would receive semi-monthly payments of his Base Salary for two years.   In consideration for these payments, the Employment Agreement required Mans to "perform only those consulting or other services specifically authorized and directed by his Supervisor" from the date of his receiving notice to his effective termination date. However, if Mans breached the restrictive covenants he would no longer be entitled to the payments and would be required to return "all such payments already received."

**¶4**        Due to the economic downturn, Lawson reorganized its workforce and terminated Mans' employment without cause.  On July 24, 2009, Mans received written notice of termination of his employment with Lawson.  The letter stated that pursuant to the Employment Agreement, the effective date of Mans' termination would be on July 23, 2011, two

years from the date of the notice. The letter further stated that in accordance with the terms of the Employment Agreement, Mans would receive "a two-year period of semi-monthly payments at [his] current Base Salary" for the period from receipt of the notice (July 2009) up to his effective termination date (July 2011).

¶5 In September 2009, Lawson and Mans entered into a Separation Agreement. The Separation Agreement purported to "modify the Employment Agreement so that [Mans'] last work day will be July 24, 2009," and to "confirm the arrangements for compensation and benefits after July 24, 2009, so that [Mans'] employment with [Lawson] will terminate effective July 27, 2011." Under the Separation Agreement, Mans was relieved of all of his duties – including his duty to consult – as of July 24, 2009. For the period between the notice of termination (July 24, 2009) and the effective termination date (July 27, 2011), Mans would continue to receive his salary in accordance with the Employment Agreement. Mans also remained eligible to participate in employment benefits during this time period and would be provided outplacement services to be paid for by Lawson. The Separation Agreement incorporates the restrictive covenants contained in the Employment Agreement, directing that they would run from the effective termination date, July 27, 2011, through July 26, 2013.

¶6 The Separation Agreement required Mans to provide a General Release to Lawson of any claims "arising out of or related to [Mans'] employment with and/or separation from employment with [Lawson]." Mans also agreed never to sue or become a party to a lawsuit "on the basis of any claim . . . arising out of or related to [his] employment with and/or separation from employment with [Lawson]." Breach of this agreement not to sue would result in Mans' obligation to pay, at the option of Lawson, either the resulting litigation expenses or, as an alternative, repayment of all but $100 of the severance payments paid by Lawson to Mans under the Employment Agreement.

¶7 In August 2011, shortly after his effective termination date, Mans filed a complaint requesting (1) a declaratory judgment that the restrictive covenants in the Employment Agreement were unenforceable and (2) an injunction prohibiting Lawson from enforcing the restrictive covenants. Lawson filed an answer and counterclaim alleging that Mans had breached the agreement not to sue in the Separation Agreement (Count One) and the restrictive covenants (Count Two). Lawson sought liquidated damages pursuant to the Separation Agreement in the amount of Mans' severance payments less $100.

¶8            Mans moved for summary judgment seeking a declaration that, because he was terminated by Lawson without cause, the restrictive covenants in the Employment Agreement were unenforceable.  The court granted Mans' motion, and, as a result, Mans was granted the declaratory judgment and injunctive relief he requested in his complaint, as well as dismissal of Count Two in Lawson's counterclaim.

¶9            Lawson then filed a motion for partial summary judgment as to Count One of its counterclaim, seeking liquidated damages for Mans' breach of the agreement not to sue in the Separation Agreement.  Mans filed a response and cross-moved for summary judgment, arguing the agreement not to sue and the liquidated damages provision in the Separation Agreement were unenforceable.  The court granted Lawson's motion, finding the Separation Agreement was a valid enforceable contract and that the liquidated damages provision was not an unenforceable penalty because of exculpatory language in the contract.

¶10           Mans then filed a motion for new trial, arguing the court erred in denying his cross-motion because it incorrectly concluded the liquidated damages clause was not an unenforceable penalty.  The motion did not seek to disturb any other aspect of the court's ruling; however, in seeking a declaration that the liquidated damages provision was unenforceable, Mans re-urged the argument in his cross-motion for summary judgment that the agreement not to sue was also unenforceable. The court granted Mans' motion for new trial; it concluded its prior ruling was contrary to law because the liquidated damages clause was an unenforceable penalty.  The court also granted Mans' cross-motion for summary judgment.  Lawson timely appealed.

**DISCUSSION**

I.    Choice of Law

¶11           Both the Employment Agreement and the Separation Agreement contain choice of law provisions; the Employment Agreement states Nevada law applies, while the Separation Agreement specifies that Illinois law applies.  The Separation Agreement modifies the Employment Agreement and directs that any conflict between the terms of the two agreements will be controlled by the Separation Agreement.  Accordingly, the parties and the court applied the chosen law, Illinois, to substantive issues, but the forum law, Arizona, to procedural matters.  *See Nanini v. Nanini*, 166 Ariz. 287, 290, 802 P.2d 438, 441 (App. 1990) (stating that the chosen state's law will govern a contractual relationship as long as the

chosen law has some nexus with the parties or the contract); *Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 257, 735 P.2d 1373, 1380 (App. 1987) ("Procedural matters are usually governed by the law of the forum."). We therefore apply Arizona law to procedural matters and Illinois law to substantive issues.

## II.    Standard of Review

**¶12**        Where no material facts are in dispute, we "review a trial court's grant of summary judgment *de novo* and independently determine whether a court's legal conclusions were correct." *Ledvina v. Cerasani*, 213 Ariz. 569, 570, ¶ 3, 146 P.3d 70, 71 (App. 2006). This case presents questions of contract interpretation. "The interpretation of any contract is a question of law to be determined by the appellate court independently of the trial court's judgment and in accordance with general rules applicable to contract construction." *Schwinder v. Austin Bank of Chicago*, 809 N.E.2d 180, 189-90 (Ill. App. Ct. 2004). The enforceability of a restrictive covenant is a question of law, and we review the trial court's determination *de novo*. *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 395-96 (Ill. 2011).

## III.    The Employment Agreement

**¶13**        Mans argues any alleged breach of the restrictive covenants is moot because the time period for the restrictive covenants has expired. We disagree. Mans has admitted to breaching the restrictive covenants when he began working for a competitor in August 2011. Accordingly, our determination of whether the restrictive covenants are enforceable against Mans will have a direct impact on Lawson's breach of contract claims that are based on Mans' violation of those restrictive covenants. *See Berlin v. Sara Bush Lincoln Health Cntr.*, 688 N.E.2d 106, 109 (Ill. 1997) (stating that "where a decision 'could have a direct impact on the rights and duties of the parties' there is life in the appeal").

### A.    Restrictive Covenants

**¶14**        Although all restrictive covenants in employment contracts are not void, Illinois has a public policy of providing employees greater protection from the negative effects of restrictive covenants. *Brown & Brown, Inc. v. Mudron*, 887 N.E.2d 437, 440 (Ill. App. Ct. 2008). Consistent with this public policy, under Illinois law, an employer that terminates an employee without cause cannot enforce restrictive covenants against the employee. *Bishop v. Lakeland Animal Hosp., P.C.*, 644 N.E.2d 33, 36-37 (Ill. App. Ct. 1994) ("[I]n order for a noncompetition clause to be enforceable,

first, the employee must have been terminated for cause or by his own accord."); *cf. Francorp, Inc. v. Siebert*, 126 F.Supp. 2d 543, 546 (N.D. Ill. 2000) (stating that pursuant to Illinois law "an employer cannot enforce a noncompetition agreement against an employee who has been dismissed without cause").

¶15      Lawson argues that because it did not terminate Mans in bad faith, the rule in *Bishop* does not apply. However, the holding in *Bishop* is not limited to the bad faith termination of an employee. Rather, the court's holding is based on the reasoning that the implied promise of good faith "'modifies [the employer's] discretionary right to dismiss [the employee] and then to invoke the restrictive covenant.'" *Bishop*, 644 N.E.2d at 36 (quoting *Rao v. Rao*, 718 F.2d 219, 223 (7th Cir. 1983)). As a result, *Bishop* concluded "that the implied promise of good faith inherent in every contract precludes the enforcement of a noncompetition clause when the employee is dismissed without cause." *Bishop*, 644 N.E.2d at 36.

¶16      To avoid *Bishop*, Lawson seeks to validate the applicability and enforceability of the restrictive covenants under the reasonableness analysis contained in *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393 (Ill. 2011). Lawson's reliance on *Reliable Fire* is misplaced. *Reliable Fire* does not alter or address the rule set forth in *Bishop*, and is factually distinguishable; the employees were not terminated without cause, but rather were violating their non-compete clause while still employed. *Id.* at 395, ¶ 4-6.

¶17      Here, Lawson does not dispute that Mans was terminated without cause, and accordingly the rule in *Bishop*, which is still good law, clearly applies. The restrictive covenants are unenforceable against Mans.

        B.     Lawson's Laches Argument

¶18      Lawson argues Mans' claim should be barred by laches because he waited to file his complaint until after he received the entirety of his severance payments. "The two fundamental elements of laches are (1) a lack of due diligence by the party asserting the claim and (2) prejudice to the opposing party." *Jameson Realty Grp. v. Kostiner*, 813 N.E.2d 1124, 1137 (Ill. App. Ct. 2004).

¶19      Lawson suffered no prejudice and, as a result, its laches claim fails. *In re Marriage of Smith*, 806 N.E.2d 727, 733 (Ill. App. Ct. 2004) (stating that the failure to show resulting prejudice "obviates the need to address" whether the claim was diligently filed). Under the Employment Agreement, Lawson was contractually required to pay Mans his severance

salary for two years. Lawson states that Mans' delay "caused significant financial detriment to [Lawson]," but Lawson has not shown how it is prejudiced by the fact that it paid Mans his contractually owed severance payments. Additionally, because the restrictive covenants were unenforceable from the moment Mans was terminated without cause, the timing of the suit did not prejudice Lawson; Mans remained entitled to his severance pay. *See supra*, ¶¶ *14-17.*

IV.     The Separation Agreement

¶20     About a month after receiving his notice of termination, Mans signed the Separation Agreement. The Separation Agreement did not modify the substantive terms of the restrictive covenants contained in the Employment Agreement; rather, it incorporated the restrictive covenants and specified their applicable dates and duration. The Separation Agreement did alter the conditions and benefits of Mans' severance payments by providing that he was relieved of all consulting duties and entitled to some additional benefits.

¶21     The Separation Agreement also included Mans' agreement not to sue and the accompanying liquidated damages for breach of that agreement, as well as the General Release from all claims related to Mans' employment. In its counterclaim, Lawson sought to enforce these provisions against Mans.

     A.     The Liquidated Damages Provision

¶22     Lawson argues the court improperly granted Mans' motion for new trial because the law and evidence supported the court's first conclusion that the liquidated damages provision was not an unenforceable penalty.

¶23     We review an order granting a new trial for abuse of discretion. *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 325, 762 P.2d 609, 612 (App. 1988). We review the court's legal determination of whether the contractual provision is a valid liquidated damages clause or an unenforceable penalty *de novo*. *Med+Plus Neck & Back Pain Ctr., v. Noffsinger*, 726 N.E.2d 687, 693 (Ill. App. Ct. 2000). Each liquidated damages provision must be evaluated on its own facts and circumstances. *Karimi v. 401 N. Wabash Venture, LLC*, 952 N.E.2d 1278, 1285 (Ill. App. Ct. 2011).

¶24        Illinois follows a three-part test, based on the Restatement (Second) of Contracts § 356 (1981), in determining whether a liquidated damages clause is valid or is an unenforceable penalty:

> (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained; and (3) actual damages would be uncertain in amount and difficult to prove.

*Kostiner*, 813 N.E.2d at 1130 (quoting *Noffsinger*, 726 N.E.2d at 693). Consistent with this directive, exculpatory language stating the liquidated damages provision is not a penalty should be given some weight, but is not controlling. *Kostiner*, 813 N.E.2d at 1131.

¶25        "In Illinois, a provision that allows a defendant the option to receive liquidated damages or seek actual damages is unenforceable as a penalty." *Burke v. 401 Wabash Venture, LLC*, 714 F.3d 501, 508-09 (7th Cir. 2013) (citing *Karimi*, 952 N.E.2d at 1287 ¶ 21). Such a "damages" option does not meet the requirement that the parties agree, at the time of contracting, to a sum certain; instead, it allows one party to penalize another party by providing for "a minimum recovery regardless of actual damages," and also allowing the enforcing party to "disregard liquidated damages if actual damages exceeded the specified amount." *Karimi*, 952 N.E.2d at 1287, ¶ 21. "This negates the purpose of liquidated damages, which is to provide parties with an agreed upon, predetermined damages amount when actual damages may be difficult to ascertain." *Burke*, 714 F.3d at 509.

¶26        The liquidated damages provision in the Separation Agreement is unenforceable because, in the event Mans breaches the agreement not to sue, Lawson has the option to seek its actual damages in the form of litigation costs and expenses, or to demand that Mans repay all but $100 of his severance payments. As a result, the Separation Agreement impermissibly provides Lawson with a guarantee of recovering, at a minimum, the return of Mans' severance pay, amounting to over $350,000, regardless of the actual damages incurred from Mans' breach.

¶27        Lawson attempts to save the liquidated damages provision by claiming that its purpose is to compensate Lawson for the undeterminable damages that might result from Mans' breach of the

restrictive covenants. However, the liquidated damages provision is very clearly limited to Mans' breach of the agreement not to sue. Consequently, any damages resulting from that breach would be the costs of litigation, a cost that could be determined with precision and would not be "difficult to prove." *See Kostiner*, 813 N.E.2d at 1130 (quoting *Noffsinger*, 726 N.E.2d at 693).

¶28 Based on the terms of the liquidated damages provision, it is an unenforceable penalty, and it cannot be saved by the contract language stating it "shall not be deemed to be a penalty." Accordingly, the court did not abuse its discretion in granting Mans' motion for new trial on the enforceability of the liquidated damages provision.

### B. The Agreement Not to Sue

¶29 Lawson also appeals the court's grant of Mans' cross-motion for summary judgment. Lawson argues that in granting the motion, the court improperly found the agreement not to sue was unenforceable.

¶30 In granting Mans' cross-motion for summary judgment, the court stated that the liquidated damages provision in the Separation Agreement was unenforceable. The court decided, with no further explanation, to grant Mans' cross-motion and dismiss Lawson's sole remaining claim for breach of contract based on the covenant not to sue.

¶31 Lawson's counterclaim alleges no claims for relief independent of the restrictive covenants and liquidated damages provisions. Thus, the court's determination that both the restrictive covenants and the liquidated damages provision were unenforceable was tantamount to dismissal of Lawson's counterclaim.[1] As a result, the trial court appropriately granted summary judgment as to Lawson's claim for breach of the covenant not to sue. *See Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291, ¶ 12, 229 P.3d 1031, 1033 (App. 2010) (stating that summary judgment is proper if a party is entitled to judgment as a matter of law);

---

[1] In their briefs, the parties agree that the order finding the Separation Agreement to be valid and enforceable survived both the court's grant of Mans' motion for new trial and the determination that the liquidated damages provision was an unenforceable penalty. However, validity of the Separation Agreement, apart from the restrictive covenants and the liquidated damages provision, is not the basis for Lawson's claims for relief in its counterclaim.

*Gardner v. Royal Dev. Co.*, 11 Ariz. App. 447, 451, 465 P.2d 386, 390 (1970) (stating that appellate court will assume the court made all necessary findings to support the judgment).

## CONCLUSION

¶32      For the reasons above, we affirm the trial court's judgment.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama